JOHN C. SHORT and JAMES PARKER, receivers, &c.,

v.

ABRAM S. POST, LOUISA J. POST et al.

[Filed February 21st, 1899.]

The mere fact that certain shares of stock in the mortgagor company were found among the effects of a deceased mortgagee, and that the promoter of the mortgagor company, in negotiating with the representatives of the mortgagee, had promised certain shares of stock in the company as an inducement to bring about the loan secured by the mortgage, is insufficient to show usury in the transaction, where one of said representatives testified that the agreement was merely that he was to have shares of stock for his services, and that after the loan he gave the certificate of stock found among decedent's effects to decedent as a gift.

On bill of review.

*Mr. David J. Pancoast,* for the complainants.

*Mr. Edwin B. Goodell,* for the defendants.

REED, V. C.

Charles Colwell was the owner of a large tract of land, containing about thirty-two thousand acres, located in Atlantic county, New Jersey. One Mr. Garrahan conceived the notion of forming a corporation for the purpose of purchasing and developing this land. The property was encumbered by mortgages and judgments against Mr. Colwell to the aggregate amount of $122,000. Mr. Garrahan arranged with Mr. Colwell to buy the property. Mr. Garrahan's plan was to negotiate a new first mortgage upon the property for the sum of $150,000, and out of the money received to pay off the subsisting encumbrances. Mr. Colwell was to have, as the consideration for the property, a second mortgage for $340,000, $10,000 in cash and stock in the new corporation of the par value of $500,000. A corporation was formed with capital stock amounting to thirty-

one thousand nine hundred and ninety shares at the par value of $100 each. A loan of $150,000 to the corporation was made by William Post, to whom the first mortgage upon the property was executed. Out of the $150,000 received from Mr. Post the encumbrances, amounting to $122,000, were paid, as well as the $10,000 in cash paid to Mr. Colwell. In fact, with the exception of $1,000, all the money which came to the hands of this corporation was from the loan of Mr. Post, and even the $1,000 seems to have been repaid out of the same fund.

The thirty-one thousand nine hundred and ninety shares of stock issued by the new corporation, were all issued to Mr. Colwell for the avowed purpose of giving it the appearance of being paid-up stock, issued for property purchased. The stock, in fact, represented the equity in the property, subject to the encumbrances of $150,000 and the $340,000, a total of $490,000.

After default in the payment of the $150,000 mortgage, and after the corporation had gone into the hands of a receiver, Mr. William Post filed his bill for the foreclosure of his mortgage, in which suit a final decree was entered. Thereafter a petition was presented to this court for leave to file this bill of review, upon the ground of newly-discovered material evidence of a defence to the said mortgage. Leave was granted to file the bill, and the case is now upon final hearing upon the pleadings and proofs.

The defence set up by this bill of review is, that the loan made by Mr. Post to the corporation was tainted with usury, and that the existence of the facts upon which usury is predicated came to the knowledge of the complainants after the decree in the original suit. The alleged usurious taint in the mortgage is, that it was agreed between the company and William Post that he was to receive, as a consideration for making the loan of $150,000, fifteen hundred shares of the stock of the new corporation, and that he did receive such shares pursuant to such agreement.

Prefatory to a consideration of the evidence in respect to this defence, I will observe that, in my judgment, the equity of redemption in the property, at the time of the organization of

the company, had no substantial value. The stock, therefore, which represented only such equity, had no value. What value it might acquire in the future depended on the successful development and sale of the land. There appears to have been no successful manipulation of the property, and the company was soon confronted with a condition of insolvency. I am satisfied that at no time in the history of the company would the property have sold for enough to pay the total amount of the mortgage encumbrances; that it will not now sell for $490,000 I am entirely sure.

The result sought to be obtained by this bill is to diminish the amount of the first encumbrance to the advantage of Mr. Colwell, the second mortgagee; and Mr. Colwell is the witness who, it is claimed, had knowledge at the time of the execution of the mortgage, of its usurious character, and who, after the entry of the final decree in the original suit, brought such knowledge to the attention of the receivers. He was a party in the original suit, and had the privilege of setting up that defence in that action. *Pinnell* v. *Boyd, 6 Stew. Eq. 600; Truesdell* v. *Dowden, 2 Dick. Ch. Rep. 396.* He did not do so. Nevertheless, the receivers, as owners of the equity of redemption, have the technical right to set up the defence, however obvious it may be that it will not benefit the general creditors of the corporation. It is proven to my satisfaction that the facts testified to in this cause were not known to the receivers at the time of the entry of the former decree; and I think it may be said that they were not discoverable by the use of reasonable diligence in preparing the cause for trial. The books of the corporation gave them no clew to such defence, and a resort to Mr. Colwell for information in respect to the character of the first mortgage loan was not a reasonable requirement. This, therefore, brings us to the inquiry whether the agreement for the loan was tainted with a usurious element. The originator and primary promoter of the scheme for the formation of a corporation was Peter Garrahan. He conceived of, and indirectly negotiated, the loan of $150,000. His negotiations were not personally with Mr. William Post, the lender,

but with a Mr. Kirby, and through him with Mr. William Clark Rowe, a lawyer, and Mr. William H. Post, a son of Mr. William Post.

Mr. Garrahan seems to have first talked with Mr. Kirby, who brought the other gentlemen into the transaction. Mr. Garrahan does not say that he made any personal arrangements with Mr. William Post by which the latter should have fifteen hundred shares of the stock of the corporation as an inducement to the loan; but he says that the arrangement to give stock was with the other gentlemen, and he specifically says that fifteen hundred shares of stock were to go, not to William Post alone, but to Mr. Kirby, Mr. Rowe, William H. Post and William Post.

Mr. William Post himself never met Mr. Garrahan except on the day when the mortgage was executed at the office of Mr. Rowe. On that occasion William Post remained at the office of Mr. Rowe, as he says, until the papers were signed, and by papers I understand him to mean the bond and mortgage. The stock was actually distributed in this way : All of it was first issued to Mr. Colwell. Mr. Colwell retained fifteen hundred shares. He then assigned ten thousand shares to Mr. Garrahan, the promoter of the company. Mr. Garrahan says that one hundred and fifty shares, which had been issued to Mr. Colwell, were given to William H. Post for his services as secretary; that the same number, he thinks, were given to Mr. Rowe, the lawyer, and he cannot say whether any were issued to Mr. Kirby. Upon reference to the stock-book and the minute-book of the corporation, it appears that in fact three hundred and one shares were issued to William H. Post, five hundred and one shares to Mr. Rowe, and five hundred shares to Mr. Kirby. In addition, seven hundred shares were issued to a Mr. Larrimore, as Mr. Garrahan says, for his services as a director. There is a certificate for seven hundred shares, known as certificate No. 12, which was found among the papers of William Post, the mortgagee, after his death. This certificate for seven hundred shares is alleged to be a part of the fifteen hundred shares which Mr.

Garrahan says were to be received by William Post as an inducement for the loan.

Mr. Rowe testifies as to the manner in which this certificate for seven hundred shares of stock came to the hands of Mr. William Post. He says that he had been employed by Mr. Post to examine the property to be mortgaged for $150,000, in respect to its value, as well as its title. He made such examination and reported favorably as to both value and title. He says that he was to receive as a fee for his services from the corporation, or rather the promoters of the corporation, the sum of $2,500, besides which there was to be issued to him a number of shares of the stock of the corporation. He says that there was no agreement at the time the loan was made that any shares were to go to the mortgagee. Mr. Rowe was elected secretary of the company, and to him were issued twelve hundred and one shares, inclusive of the seven hundred shares in certificate No. 12. His account is that some time after the loan was made he presented to Mr. William Post, who had given him a great deal of business, the certificate for seven hundred shares, and kept the remainder of the twelve hundred and one shares himself. Unless the testimony of Mr. Rowe is overcome by a clear preponderance of evidence to the contrary, there was no usury in the transaction.

The only evidence to the contrary is the fact of the seven hundred shares being found among the papers of Mr. William Post, after his death, and the testimony of Mr. Garrahan. While the fact may be suspicious, it is not sufficient to overcome the express declaration of Mr. Rowe. In regard to the testimony of Mr. Garrahan, it is to be observed that all he says is that fifteen hundred shares were to go for the loan, and that it was to be divided between the mortgagee, his son, his attorney and Mr. Kirby. It appears, in fact, that a total of eighteen hundred and two shares were issued to be divided between all or some of these parties.

Again, it is obvious that all Mr. Garrahan, in fact, testifies to is that an arrangement was made with Mr. Kirby or Mr. Rowe, or possibly with William H. Post, or with all, that so many

Short v. Post.

shares of stock should be issued to them for bringing about the loan, and that when he says that the arrangement was that the stock should be issued to those persons, including William Post, he is only speaking of a general arrangement with Mr. Kirby and others, that so much stock should be issued as an induce-ment to bring about the loan. The negotiation of this loan was the principal feature of the organization of the corporation, for without it the whole scheme would have been futile. The evidence shows that to anyone who assisted in carrying forward the scheme for the organization of the company stock was given in various amounts, so that out of the whole amount of stock issued there remained but fourteen thousand two hundred and forty shares in the hands of the treasurer as still belonging to the company. I have no doubt that Mr. Garrahan arranged with Mr. Kirby, Mr. Rowe and Mr. William H. Post to give a block of stock, to be divided between them for their services and to help them accomplish the vitally-important point of getting a loan sufficiently large to pay off all the encumbrances upon the property. But in the face of Mr. Rowe's testimony that, at the time of the negotiations, Mr. William Post was not a party to any arrangement that stock should be issued for his benefit, and that this stock was given to Mr. Post some time after, I do not think that the usury is proven with that degree of certainty required to support this defence. Usury cannot be proven by suspicious circumstances, but must be established by clear and indubitable proof. *Brolasky* v. *Miller et al., 4 Halst. Ch. 789; S. C., 1 Stock. 807, 815; Conover* v. *Van Mater, 3 C. E. Gr. 481; Conover* v. *Hobart, 9 C. E. Gr. 120, 126; Gillette* v. *Ballard, 10 C. E. Gr. 491; Morris* v. *Taylor, 7 C. E. Gr. 438; Berdan* v. *Trustees of School District No. 38, 2 Dick. Ch. Rep. 8.*

This conclusion leaves it unnecessary to consider what the effect would have been upon the decree establishing the mortgage debt for principal and interest if William Post had received the stock as part of the consideration for the loan. Under the restrictions imposed in the permission to file the bill of review, and by the frame of the bill itself, the defendant is equitably bound to pay

the money received and interest.   *Miller* v. *Ford, 1 Sax. 359 ;*
*Ware* v. *Thompson's Administrators, 2 Beas. 66.*

The queries whether any decree could be made beyond that
of ordering the return of the stock to the receivers, and whether
the stock, having been issued to Mr. Colwell, is assessable
against the estate of William Post as non-paid-up stock, and
whether, if assessable, the right of the receivers to an action
constitutes a set-off which cannot be interposed to a suit in fore-
closure, do not press for a solution.   I will advise a decree
that the bill be dismissed.