# REPORTS OF CASES

### DETERMINED IN

# THE SUPREME COURT

## STATE OF UTAH.

*(Continued from Volume 42.)*

## BROWN v. JOHNSON.

No. 2461. Decided May 8, 1913. (134 Pac. 590).

1. TRIAL—FINDINGS—CONCLUSION OF LAW. Where, in an action on a note for money loaned, the evidence without dispute showed that the transaction was effected through agents of both parties, and plaintiff contended at the trial that she did not enter into a corrupt and usurious agreement, as claimed by defendant, knew nothing about it, received none of the fruits thereof, and never ratified the transaction, a finding that the agreement was entered into "between plaintiff and defendant" was not a finding of fact but a conclusion of law and improper; it being the duty of the court to specifically find the facts with regard to the matters and then draw his conclusion from the facts found. (Page 6.)

2. PRINCIPAL AND AGENT—MONEY LOANED THROUGH AGENT—USURY. Where money was left by a principal with an agent to be loaned, and the agent took usury, but without the knowledge of the principal or her receiving any fruits of the transaction, the principal was not chargeable with the effects of the agent's misconduct. (Page 6.)

3. USURY—RATE OF INTEREST—RESERVATION IN NOTE. Under the statute permitting any rate of interest not exceeding twelve per cent. per annum, a note calling for interest at the rate of one per cent. per month is not usurious. (Page 7.)

4. USURY—PENALTIES—FORFEITURE. Under the usury statute, providing that, whenever it shall satisfactorily appear by admission of the party or by proof that any bond, bill, etc., has been taken or received in violation of the provisions of the act, then, and not otherwise, shall the lender forfeit the whole sum expressed in the contract to the borrower, a forfeiture for usury will not be declared except on evidence clear and convincing that the lender participated in or benefited directly or indirectly by the transaction. (Page 12.)

43 Utah (1)

5. USURY—EVIDENCE—TESTIMONY OF BORROWER'S AGENT. Defendant, having acted through her mother as her agent, borrowed $350 from plaintiff through her uncle, with whom she had placed the money to be loaned, and in an action to recover the same claimed that the loan was void for usury. *Held*, that evidence of defendant's mother that when she applied to plaintiff's uncle for the loan he advised her that she needed $350 and that he could let her have the money, but she would have to pay fifty dollars for it for ninety days, was admissible against plaintiff, though such testimony, standing alone, was insufficient to make out a case of usury as against her. (Page 13.)

6. USURY—EVIDENCE. In an action on a note evidencing a loan negoiated by plaintiff's uncle to defendant through her mother, which defendant claimed was usurious, evidence of plaintiff's uncle that the fifty dollars he received was not only for making the loan of $350 to defendant for ninety days but also for obtaining a loan on a house and lot owned by defendant's mother was admissible under the rule that where usury is claimed it is always proper to prove the whole transaction to disclose all the circumstances surrounding it. (Page 13.)

APPEAL from District Court, Third District; *Hon. F. C. Loofbourow*, Judge.

Action by Carrie Brown against Sarah M. Johnson.

Judgment for defendant. Plaintiff appeals.

REVERSED AND REMANDED, WITH DIRECTIONS.

*Allen T. Sanford*, for appellant.

*Adam Duncan*, for respondent.

FRICK, J.

This was an action to recover upon a promissory note given for $350. The only defense interposed is usury. A trial to the court resulted in findings and judgment for defendant, and the plaintiff appeals.

The interest specified in the note did not exceed the rate permitted by our statute, and hence the defendant undertook to prove usury by parol evidence. We have carefully gone over and examined all of the evidence that was produced at the trial, and which was certified up by the trial court in appellant's bill of exceptions. The material evidence produced by both parties is substantially as follows: Some time

in 1910 Mrs. Mansfield, the mother of respondent, applied to one Adolph Lochwitz to obtain a loan of $250 or $300 which she said she needed immediately to pay certain materialmen for material which they had furnished and were furnishing for a new dwelling house she was then building. In this connection she testified that she went to Mr. Lochwitz and asked him for the money, and after telling him that she could secure its payment by a chattel mortgage upon her daughter's (respondent's) property he said that he would see what he could do for her by way of obtaining the money and that he advised her that she needed at least $350; that within a day or two thereafter she saw him again and he told her that he could let her have the money but that she would have to pay fifty dollars for it for ninety days; that pursuant to this arrangement she, at his request went to the office of Mr. Sanford, an attorney at law, to have the necessary papers drawn to evidence the loan and there to obtain the money; that she met Mr. Sanford and Mr. Lochwitz at the office of the former and he prepared the papers and she signed them by signing her daughter's name, by herself, as attorney in fact; that after the papers were signed Mr. Sanford counted out $300, placing the same in three separate parsels, and also counted out an additional fifty dollars and placed it in a separate parcel and shoved the whole amount across the office desk toward her; that she was about to take the money when Mr. Lochwitz said that the interest and expenses for drawing the papers should be deducted from the amount. After this the witness' memory is not clear with respect to just how the transaction terminated. Mr. Sanford, however, testified that he obtained the $350 from his stenographer, with whom Mr. Lochwitz had left it, and that he counted all of it and shoved it across the desk to Mrs. Mansfield when Mr. Lochwitz spoke up and said that the interest called for in the note, to wit, one per cent. a month, should be taken out of the amount, and further that one-half of the expenses for drawing the papers should also be deducted therefrom. He accordingly asked Mr. Sanford what the expenses were and was informed that they would be five

dollars. Mr. Sanford then sought to take the amount of the interest, namely, $10.50, and his expenses, five dollars, out of the $350, but could not do so because he could not make the change correctly. Mr. Lochwitz then paid Mr. Sanford the portion of the expenses Mrs. Mansfield was to pay and immediately left the office to go with her to the bank where she wanted to deposit the money so that she could check against it, where she said she would repay him her share of the expenses. As to what happened at the bank, the witnesses are greatly at variance, but, in view of the conclusions reached, the precise nature of the transaction there is not material. Mrs. Mansfield, however, asserts that Mr. Lochwitz took the whold fifty dollars for interest, while he isists that all he took was $10.50 and one-half of the expenses, and that Mrs. Mansfield gave him thirty-seven dollars as compensation for his efforts in obtaining the money in question and to further assist her to obtain a loan upon her house she was then building. He says that this came about in this way: When Mrs. Mansfield asked him for the money in question he asked her what means she had to repay the loan if made; that she said she wanted to secure $1,200 by mortgaging her house, and if she could do so she could repay the loan from him out of that. After considering her wants as detailed by her, he told her that she had better make a loan of $1,600, and that in consideration of the fifty dollars she offered to pay him he would assist her to obtain the loan from some real estate men with whom he was acquainted. She disputes the latter statement and insists that the fifty dollars was asked as a compensation for the use of the money in question. The evidence is without contradiction that the money in question belonged to the appellant, who is a niece of Mr. Lochwitz, and at the time the loan was made lived and still lives in San Francisco; that some time prior to the transaction in question she had lived at Price, Utah, and from there came to Salt Lake City for surgical treatment; that after she was operated upon and was about to leave Salt Lake City for San Francisco she had more money than she needed and she gave $400 to her

uncle, Mr. Lochwitz, telling him to use it or do with it as he thought best, and when she needed it he could upon request return it to her.   Mr. Lochwitz states that after he had tried in vain for a number of days to obtain the money for Mrs. Mansfield, and after she had offered him fifty dollars as compensation to obtain it, he finally let her have $350 of the $400 aforesaid and took a chattel mortgage as security; that his niece had no knowledge whatever that he was about to make or that he had made the loan until afterwards, when he advised her of the fact and asked her to execute a power of attorney to him so that he might do everything that might be required of him in collecting the money; that she did not know anything about the arrangements between him and Mrs. Mansfield respecting the interest, commission, or bonus (whatever it may be called), and never obtained any part or share of the same; that no arrangement or understanding of any kind was ever had or talked of between him and his niece about the making of this or any other loan, or about his services in case he made a loan, and that his niece furnished the entire $350.   Respondent introduced the aforesaid power of attorney in evidence, which was dated and was executed some time after the note in question was made and delivered.   It is not necessary to detail the evidence further.

The only findings of fact made by the court, except the formal ones, are as follows:

"That the said note and mortgage were made and delivered to the plaintiff upon an agreement between the plaintiff and defendant that the defendant should pay to plaintiff, and that the plaintiff should take, receive, reserve, and secure to herself for the loan of the principal sum therein mentioned, a greater sum than at the rate of twelve per centum per annum upon said principal sum, to wit, at the rate of one per cent. per month from date of said note, as provided therein, and in addition thereto the sum of thirty-four dollars; and, in addition to the said interest so reserved by the said note at the rate of 1 per cent. per month from date thereof until paid, the defendant at the time of the execution and delivered thereof paid to the plaintiff, and the plaintiff took and receiv-

ed in pursuance of said agreement, the said further sum of $34 as additional interest or compensation for the loan of the said principal sum."

Upon the foregoing findings the court made conclusions of law and entered judgment in favor of respondent in which the note and chattel mortgage were canceled and appellant was adjudged to pay the costs of the action. Appellant complains that the findings aforesaid are not sustained by the evidence and that the court's conclusions of law and judgment are contrary to law.

We think it requires no extended, if any, argument to show that in view of the evidence to which we have referred the so-called findings of fact are merely a blending of conclusions of fact and conclusions of law interspersed with some ultimate facts. The finding that an agreement was entered into "between the plaintiff and defendant" is in view of the evidence a conclusion of law pure and simple, since the evidence is without dispute that Mr. Lochwitz acted as agent for and on behalf of the appellant and that Mrs. Mansfield acted as such for and on behalf of the respondent. In view, therefore, that the transaction was effected through the agents of both parties, and since appellant contended, at the trial and now contends that she did not enter into a corrupt and usurious agreement, knew nothing about it, and neither received any of of the fruits thereof nor ratified the transaction, the court should have specifically found the facts with regard to those matters and should have made his conclusions of law from the facts found.

There is not the slightest evidence in this record from which any inference can legitimately be deduced that the appellant authorized her uncle to enter into a usurious contract unless such inference is permissible from the mere fact that she left the money with him under the conditions hereinbefore detailed and from the execution of the power of attorney to him after the loan was made. Nor is there any evidence of ratification, nor that she knowingly received or retained any of the fruits of the illegal transaction, nor that she received anything forbidden

by law. We think the great weight of authority is to the effect that the facts in this case are clearly insufficient to justify the inference above referred to. We shall refer to some of the cases upon this point further on in this opinion.

The court, however, also found that the note in question upon its face provided for a higher rate of interest than is permitted by our statute in that it calls for interest at the rate of one per cent. a month while the statute permits interest at a rate "not to exceed twelve per cent. per annum." If this were so, the finding is useless, since the note speaks for itself. The finding is, however, a mere conclusion of law, but whether it is called a conclusion or a finding of fact it cannot be sustained because there is no evidence whatever to support it. Nor does the language of the note support it if it be assumed to be a mere legal conclusion. This is easily demonstrable. The statute permits any rate of interest not exceeding twelve per cent. per annum. This means a period of twelve months, no more no less. One per cent. a month is precisely twelve per cent. per annum, and this is especially so where the loan is for less than a whole year. If the interest reserved in the note in question be calculated, we find that upon the $350 it amounts to $3.50 a month and for twelve months to forty-two dollars. Interest at the rate of twelve per cent. per annum would amount to forty-two dollars for a year on $350 and to $3.50 for each month, and for three months to $10.50, just the amount reserved in the note. If it were true that the note on its face called for a usurious rate, then we cannot see how the appellant could escape the consequences of a usurious contract, and the judgment would be correct regardless of the findings of fact, and there would have been no need of an extended opinion in this case. We are, however, clearly of the opinion that the note upon its face called for legal interest merely, and hence the usury must be established, if established at all, from facts *aliunde*. The question, therefore, is, Does the evidence in this case establish usury in the sense that it vitiates the note under our statute as between appellant and respondent? While the courts with regard to when a

principal is bound by the acts of an agent in entering into usurious contracts or transactions are seemingly not in harmony, yet from a careful examination of the cases it will be found that their divergent views are more apparent than real.

In *Boylston v. Bain,* 90 Ill. 285, the Supreme Court of Illinois states the law upon the subject thus:

"If the plaintiff did not authorize his agent to charge a higher rate of interest than is given by the statute, and if he had no knowledge that a higher rate was charged, and did not receive the interest paid in excess of that allowed by statute, as stated in the instruction, we preceive no ground upon which the defense of usury could be rested. An unlawful and corrupt intent is the very essence of a usurious transaction, and how the plaintiff could be charged with an intent to violate the law if he had no knowledge that a usurious rate of interest was charged, and never received the illegal interest, as declared in the instruction, it is difficult to understand."

The Supreme Court of Iowa in *Greenfield v. Monaghan,* 85 Iowa, 211, 52 N. W. 193, in the headnote, lays down the following rule:

"Where an agent, for a person lending money upon a promissory note, charged the borrower a rate of interest in excess of that allowed by law, retaining the difference between the rate charged and the legal rate for his own use, held, that the loan was not usurious unless the charge of illegal interest was authorized or ratified by the principal, and that upon such issue the burden of proof was upon the party charging usury."

In *Call v. Palmer,* 116 U. S. 102, 6 Sup. Ct. 303, 29 L. Ed. 559, the Supreme Court of the United States, after reviewing the Iowa cases in connection with a number of others, says:

"These decisions seem to be founded on plain principles of justice and right. For when two persons (the agent and the borrower) conspire together and for their own purposes violate the law, how can punishment for their acts be justly imposed on the innocent third party (the lender)?"

What have we in this case except a secret arrangement between Mrs. Mansfield and Mr. Lochwitz, the former being anxious to obtain the money and the latter desirous of re-

ceiving the bonus or a commission (call it what you will) from her out of the money loaned without the knowledge or consent of appellant whose money was loaned? Why should she be made to suffer for their acts from which each expected some benefits while she could obtain none except the interest allowed by law?

The editor in a footnote to the case of *Bank of Newport v. Cook,* 46 Am. St. Rep. 197, after reviewing many of the cases, states the substance of the decisions in the following language:

"If the person to whom a commission or bonus is paid is an agent of the lender, the question whether such payment can be taken into consideration in determining whether the transaction is usurious depends upon whether or not the lender is to profit directly or indirectly by the transaction. If he does not know that a commission has been, or is agreed to be, paid and has no notice of such facts as impose upon him the duty of inquiry, and he does not knowingly receive any benefit from the commission or bonus, he certainly has no usurious intent, and, having neither usurious intent nor a usurious profit, the cases agree that he is not to be subjected to the penalties of usury."

Many cases are cited as supporting the foregoing statement of the editor.

Without making further excerpts from the decisions, we refer to the following cases, all of which are in harmony with the cases referred to and in which many others are cited: *Estevez v. Purdy,* 66 N. Y. 446; *Conover v. Van Mater,* 18 N. J. Eq. 481; *Rogers v. Buckingham,* 33 Conn. 81; *Franzen v. Hammond,* 136 Wis. 239, 116 N. W. 169, 19 L. R. A. (N. S.) 399, 128 Am. St. Rep. 1079; *Silverman v. Katz* (Sup.), 120 N. Y. Supp. 790.

In the case of *Rogers v. Buckingham, supra,* the transaction there involved, like the one in this case, was the only one that had been entered into by the agent for the principal, and the court held that a single transaction by an agent, where no arrangement existed between the principal and such agent with regard to the compensation he should receive or the rate he should reserve, was insufficient to au-

thorize an inference or presumption of fact that the agent was authorized to exact usury. That case is frequently cited and approved by the courts upon the question of establishing authority upon the part of the agent to bind the principal upon a usurious contract made by the agent.

It has, however, also been frequently held that, where an agent enters into a usurious contract with a borrower, the lender under certain circumstances may be bound by the acts of the agent, although the former did not know of nor directly authorize the particular transaction. The rule in this respect is perhaps as well stated by the Supreme Court of Minnesota as it is anywhere in the headnote to the opinion in the case of *Hall v. Maudlin*, 58 Minn. 137, 59 N. W. 985, 49 Am. St. Rep. 492, which we quote:

"Where a money lender intrusts the entire management of his business to a general agent, with unlimited authority to conduct it according to his own discretion, and with the understanding that he shall obtain the compensation for his services as agent from the borrowers, in the form of bonus or commission, if the agent exacts from a borrower a bonus or commission which, together with the interest reserved in the contract, amounts to more than the maximum rate of interest allowed by law, the transaction is usurious."

The following cases clearly support the rule as there stated: *Robinson v. Blaker,* 85 Minn. 242, 88 N. W. 845, 89 Am. St. Rep. 541; *Payne v. Henderson,* 106 Ky. 135, 50 S. W. 34; *Payne v. Newcomb,* 100 Ill. 611, 39 Am. Rep. 69; *Fowler v. Equitable Trust Co.,* 141 U. S. 384, 12 Sup. Ct. 1, 35 L. Ed. 786; *Clarke v. Havard,* 111 Ga. 242, 36 S. E. 837, 51 L. R. A. 499; *Whaley v. American, etc., Co.,* 74 Fed. 73, 20 C. C. A. 306. See, also cases cited in the footnote to *Bank v. Cook,* 46 Am. St. Rep. 198, 199.

In addition to the cases just cited there are a few in which the principal's liability is extended to all acts which were within the apparent scope of the agent's authority. All that the courts in those cases seemed to inquire into was whether the agent had the authority to make the loan and if he had the principal was held bound by the agent's acts, although the agent transcended the express directions of his principal.

To this effect is an early case from Nebraska which is referred to by Mr. Justice Sullivan in *Hare v. Winterer,* 64 Neb. 551, 90 N. W. 544. In the latter case it is, however, expressly stated that it was not necessary to go, and that the court did not go to that extent in a later case. The later Nebraska case may therefore be classed as belonging to the second group of cases cited above. Another case which perhaps goes to extent of the early Nebraska case is *Austin v. Harrington,,* 28 Vt. 130.

It is also claimed by respondent that the case of *Algur v. Gardner,* 54 N. Y. 360, supports the doctrine laid down in the Vermont case. It will be observed that the case of Estevez v. Purdy, *supra,* to which we have referred, and which is a later New York case, squarely lays down the doctrine of the Illinois case which we have quoted from. Moreover, the reasoning in the opinion in 54 N. Y. is not satisfactory and we have not found the case cited nor followed by any of the later New York or other cases, while the case in 66 N. Y. has frequently been cited and followed.

There is still another case decided by the Supreme Court of Missouri, *Storage, etc., Co. v. Glasner,* 169 Mo. 38, 68 S. W. 917. The decision in that case is, however, squarely based upon a local statute and is therefore not controlling here. There may be a few more sporadic cases which follow the rule laid down by the Vermont court, but we have not found them. We desire to add in this connection that, when all of the cases from which we have quoted, and the others to which we have referred, except the ones from Nebraska, Vermont, and Missouri, and possibly the one in 54 N. Y., are carefully examine and analyzed, it will be found that all of them support the doctrine laid down by the Supreme Court of Illinois in the case of *Boylston v. Bain, supra.* We are also of the opinion that the doctrine as there laid down is the correct one. The question of whether the agent had authority to enter into a contract in violation of law should not be limited to the mere formal inquiry of whether he had the express or implied authority to lend the principal's money. While that question, as a matter of course, is always an

element and lies at the very threshold of the inquiry where the authority of the agent is involved, yet, where the transaction involves the violation of a statute, the inquiry should go farther and it should be ascertained whether the agent had the authority to enter into the contract which is alleged to be in violation of law. To establish such authority it need not be shown that the principal expressly conferred it, but it may be shown in the same manner as it usually is shown by proving the facts and circumstances from which the authority may legally be inferred or implied. And in this regard, if it be shown that there was an understanding, express or implied, between the agent and the principal whereby the former should look to the borrower for a commission or bonus as compensation, or if he has made loans for his principal in which such a course was pursued and the principal knew of it, or approved of it, or if there are any other facts or circumstances from which authority may be clearly implied, it may be found to exist. In the case at bar, as we have seen, there is nothing from which authority may be deduced except the naked fact that the uncle of appellant was authorized to exercise his best judgment in making use of the $400 she had left with him. Assuming that all that Mrs. Mansfield claims is true, still the question remains, What authority has the court to declare appellant's money forfeited to the respondent? Certainly our statute does not require that under such conditions the latter's money should be forfeited to the borrower.

The statute says "whenever it shall satisfactorily appear by the admission of the party or by proof that any bond, bill, etc., * * * has been taken or received in violation of the provisions" of the statutes, then, and not otherwise, shall the lender forfeit the whole sum expressed in the contract to the borrower. We held in *Culmer Paint & Gass Co. v. Gleason,* 42 Utah 344, 130 Pac. 66, that when the plea of usury is interposed and forfeitures are involved, and "especially such as have the effect of taking property from one and giving it an another (the forfeiture) should be enforced only when the proof is clear and con-

vincing, if not beyond a reasonable doubt." We think that this is what is contemplated by the language of the statute which is, when it shall satisfactorily appear by the admission of the party or by proof that the provisions thereof have been violated, a forfeiture, etc., shall be declared by the court. If this means anything, it means that the proof showing a violation of the statute should be clear and convincing. The proof, in order to be satisfactory, can be no less than this.

Entirely apart, however, from the terms of our statute, the overwhelming weight of authority is clearly to the effect that the burden of proof is upon him who alleges usury and that he must establish it by at least clear and convincing evidence and not merely by a preponderance thereof. Webb, Usury, section 417; *Yellow Medicine, etc., v. Cook,* 61 Minn. 452, 63 N. W. 1093; *Wood v. Babbitt* (C. C.) 149 Fed. 818; *Conover v. Van Mater, supra; Short v. Post,* 58 N. J. Eq. 130, 42 Atl. 569. The evidence as it now stands is therefore clearly within the rule laid down in *Yellow Medicine, etc., v. Cook, supra,* and is insufficient to support the conclusions of law and judgment.

Appellant further contends that the court erred in overruling her motion to strike the testimony of Mrs. Mansfield. This contention is not tenable. While Mrs. Mansfield's testimony, standing alone, was clearly insufficient to make out a case as against the appellant, yet the testimony was properly received by the court. There is a further assignment that the court erred in admitting and excluding certain evidence.

We have carefully gone over the court's rulings in that regard, and we do not find any error excepting in one particular in connection with the claim advanced by appellant, namely, Mr. Lochwitz claimed that he was to receive the fifty dollars as compensation for obtaining a loan upon Mrs. Mansfield's house and lot and for what he had done in looking up persons who had money to lend before the loan in question was made, and in connection with the claim he attempted to prove that he had in fact assisted Mrs. Mansfield, and he offered to show

just what he had done in that respect. The court ruled that he could prove the agreement between himself and Mrs. Mansfield, but also ruled that he could not show what he had done after the loan in question was made. Where usury is attempted to be proved by parol evidence or otherwise, it is always proper for either party to go into the whole transaction for the purpose of disclosing all of the circumstances relating thereto. The evidence offered by appellant, while somewhat remote, was nevertheless proper in view of the claim made by Mr. Lochwitz. The question was one of weight and not of relevancy. The only objection was that it was not material. It clearly was material and, as we have seen, was otherwise proper. If this were the only error, we should not reverse the judgment, because it appears from the record that most of the offer to which we have referred was nevertheless before the court, as upon cross-examination Mr. Lochwitz was permitted to state about all of the facts in that regard. We have only mentioned the matter as a guide to the court in case a retrial of the case is had.

For the reasons stated, the judgment is reversed, the case is remanded to the district court, with directions to grant a new trial and to proceed with the case in accordance with this opinion. Appellant to recover costs.

McCARTY, C. J., and STRAUP, J., concur.