McPHERSON *v.* EVART STATE BANK.

1. Receivers — Contingent Claims Ripening While Insolvent Estate is Being Administered.

Insolvent estates should not be held open to await the ripening of contingencies into certainties, but where a conditional liability becomes absolute while the estate is being administered, and the creditor's claim can be definitely determined, justice requires that it be allowed, providing it does not interfere with an early distribution of the assets.

2. Same—Banks and Banking—Where Insolvent Bank's Liability on Indorsed Notes Became Absolute Same Should be Allowed.

Where the contingent liability of an insolvent bank as indorser on notes became absolute on the notes' maturity prior to the date set for closing the estate against claims, the amounts represented thereby were then provable claims and should have been allowed by the receiver, although they had not matured when the receiver was appointed.

Appeal from Osceola; Cutler (Hal L.), J. Submitted April 12, 1927. (Docket No. 72.) Decided July 29, 1927.

Bill by Hugh A. McPherson, commissioner of banking of the State of Michigan, for the dissolution of the Evart State Bank on the grounds of insolvency: On petition of the First National Bank of Manistee to intervene for the allowance of a claim against defendant. From a decree allowing the claim in part, petitioner appeals. Modified.

*Howard L. Campbell,* for petitioner.

*Penny & Worcester,* for defendant.

McDonald, J. This is an appeal from a decree of

¹Insolvency, 32 C. J. § 171; ²Banks and Banking, 7 C. J. § 524 (Anno).

the circuit court of Osceola county, Michigan, disallowing a portion of the claim of the First National Bank of Manistee against the receiver of the Evart State Bank of Evart, Michigan.    On the 9th of February, 1924, the Evart State Bank had become insolvent. Lewis G. Hammond, cashier of the First National Bank of Reed City, was appointed receiver.    He duly qualified and is still acting in that capacity.    He will be here called the defendant.    The First National Bank of Manistee filed a claim against the insolvent bank.    The receiver refused to recognize the validity of such claim, and the First National Bank of Manistee petitioned to intervene and have its claim heard by the court.    It will be here called the plaintiff.    The claim arose from certain transactions between the two banks, in which the Evart State Bank rediscounted, through the plaintiff, the Manistee bank, promissory notes aggregating $35,048.41.    The plaintiff paid the Evart State Bank in cash the full amount represented by these notes less the discount agreed upon.    They were indorsed by the Evart bank and delivered to the plaintiff.    In the body of all of the notes was the following waiver:

"As a part of this note, it is hereby agreed that protest, demand and notice of nonpayment is waived."

A great many of the notes had not matured at the time of the appointment of the receiver.    The plaintiff filed its claim for the full amount, viz., $35,048.41, within the time fixed by the court for presenting claims.    On the hearing the court allowed $10,117.46, and disallowed the balance on the theory that, as the notes representing that portion of the claim had not matured, the liability of the insolvent bank as to them was contingent, and could not be ascertained.    From the decree entered the plaintiff has appealed.

The question presented by the record is whether in

the distribution of the assets the plaintiff bank is entitled to its *pro rata* share upon the sum represented by the notes which were not due when the receiver was appointed.    It is the contention of the plaintiff that, because of the waiver in the body of the notes, the indorser engaged absolutely, and without any contingency or condition, to pay them at maturity; that the liability of the Evart State Bank was as certain and fixed as though it were the maker of the notes, and that, therefore, they constituted a provable claim against its estate.    It is the defendant's contention that, notwithstanding the waiver, the liability of the Evart State Bank, as indorser, was contingent until the maker had failed to pay the notes on maturity; and that, as its liability could not be ascertained until the notes became due, they were not provable claims against the assets in the hands of the receiver.

The Evart State Bank is the payee in these notes. Its liability is that of an indorser and not that of a maker.    The negotiable instruments law fixes the liability of such an indorser.    It says:

\*   \*   \*   "He engages that on due presentment, it shall be accepted or paid, or both, as the case may be, according to its tenor, and that if it be dishonored and the necessary proceedings on dishonor be duly taken, he will pay the amount thereof to the holder or to any subsequent indorser who may be compelled to pay it."    2 Comp. Laws 1915, § 6107.

This statute imposes a liability on the indorser to pay the note when it has been dishonored and he has had proper notice.    His promise is not that he will pay the note at maturity, but that he will pay if the maker does not.    In other words, his contract.is to pay on being notified that the maker refuses to pay.    Presentment for payment and notice of refusal or neglect to pay are necessary legal steps to charge the indorser.    He may waive these, as was done in the

instant case, but if he does so his liability still depends upon the maker's neglect or refusal to pay.    In either event, his promise is to pay if the maker does not.    Waiver of notice only removes one of the conditions which stand in the way of absolute liability. It remains conditional until the maker has failed or refused to pay.    But on default of the maker, the indorser's liability becomes absolute and the holder may regard him as the principal debtor.    Such is the contract of an indorser.    Whether notice is waived or not waived, there is no liability on his part until the note is dishonored.    He has a right to have the maker pay on maturity if he will do so, and until maturity the liability of the indorser cannot be determined.

In support of his contention that by waiving notice the indorser becomes liable as a principal debtor at the time of the indorsement, counsel for the plaintiff quotes from 3 R. C. L. p. 1148, as follows:

"An express waiver in writing by the indorser, of presentment of the note for payment, and of notice of its nonpayment, dispenses with the conditions precedent to the indorser's liability, and makes his obligation for the payment of the note unconditional and absolute."

This quotation from the text follows the holding of the supreme court of Illinois in *Dunnigan* v. *Stevens,* 122 Ill. 396 (13 N. E. 651, 3 Am. St. Rep. 496).    It is not a correct statement of the law.    The holding in that case is based upon an apparent misunderstanding of an indorser's contract, which is, "that if it (the note) be dishonored he will pay the amount thereof to the holder," etc.    Entirely overlooking this essential element, the writer of the opinion reasons to a conclusion which imposes a liability on the indorser which the indorser never assumed.    We do not regard the case as authority on the question before us.

It is our conclusion that as to the notes involved in

239—Mich.—43.

the instant case, which have not yet matured, the indorser's liability is conditional and will remain so until they become due and the makers fail to pay. There may never be any liability on the part of the indorser, because the makers may pay at maturity. It follows that as the indorser's liability cannot be determined until the notes are due, they are not until maturity provable claims against his estate.

Another question is presented. It is the defendant's claim that the rights of creditors should be determined as of the date of the appointment of the receiver; and that therefore none of the plaintiff's notes which mature and are not paid by the makers after the receiver's appointment should be allowed, though they mature before distribution of the assets. The circuit judge upheld this contention. We think he was in error. There is authority to support such holding, but we are not inclined to follow it. We think that a more equitable rule would permit the receiver to allow proper claims at any date that would not interfere with the expeditious settlement of the estate. Insolvent estates should not be held open to await the ripening of contingencies unto certainties, but where a conditional liability becomes absolute while the estate is being administered and the creditor's claim can be definitely determined, justice requires that it should be done providing it does not interfere with an early distribution of the assets. A leading case on this question is *Pennsylvania Steel Co.* v. *Railway Co.*, 198 Fed. 721, 740. It was there said:

"One more question remains for consideration in formulating any general equitable rule. A time should be stated with respect to which the status of claims should be fixed. The briefs upon these appeals indicate a general impression among counsel that the date of the appointment of the receivers is the time which controls. Apparently this view is based upon the earlier theory of the courts that a creditors' bill is an equitable levy equivalent to a general execution

in favor of creditors who at the time it is filed are in a position to obtain execution or attachment.   But, as we have seen, the right to share in corporate assets is, at the present time, not confined to creditors who might themselves have instituted separate proceedings, nor are the assets to be shared in those alone which could be seized upon execution.   The present extension of equitable jurisdiction over corporations would be wholly unjustifiable if it were for the benefit of a particular class of creditors.   Consequently the time of the appointment of the receiver constitutes no logical or necessary date for determining the provability of demands, and it should be fixed as equity, with due regard to convenience, may require."

In the instant case, the circuit court made an order closing the estate against claims on September 5, 1925. All of the plaintiff's notes had matured on or before that date.   The indorser's liability had become absolute.   They were then provable claims and ought to have been allowed.   In the stipulated statement of facts, we find the following:

"The amount of such rediscounted notes and paper with the First National Bank of Manistee, that matured prior to September 5, 1925, is as follows:

"The total amount of such paper that had so matured, aggregates $35,048.41 upon which the sum of $15,663.16 has to this date been paid, leaving the default or deficiency in the aggregate of $19,385.25, which remains unpaid."

In view of this stipulation, the plaintiff is entitled to have its claims allowed against the insolvent estate at the sum of $19,385.25, instead of $10,117.46, as allowed by the circuit court.   On this amount, the same dividends should be paid as are paid to other creditors.

The decree of the circuit court will be modified in accordance with this opinion.   The plaintiff will have costs.

Bird, Snow, and Fellows, JJ., concurred with McDonald, J.

SHARPE, C. J. (*concurring*).    I concur in the conclusion reached by Mr. Justice MCDONALD.    As all of the notes held by the bank at Manistee had matured before the time fixed by the court for presenting claims, it is unnecessary to consider the effect of the waiver of protest, demand, and notice of nonpayment upon the liability of the indorser.

STEERE, WIEST, and CLARK, JJ., concurred with SHARPE, C. J.