COMMERCIAL FINANCE CORPORATION *v.* WILLIS H. GALE.

May Term, 1932.

Present: POWERS, C. J., SLACK, MOULTON, THOMPSON, and GRAHAM, JJ.

Opinion filed October 28, 1932.

4

*H. C. Shurtleff* for the defendant.

*Albert A. Sargent* and *George L. Hunt* for the plaintiff.

POWERS, C. J. This an action of contract with the general counts as a complaint. A specification was filed showing a promissory note for $6,000 signed by one Littlefield and payable to the plaintiff, on the back of which the defendant had signed his

6

name waiving demand and notice. On the face of the note was a memorandum indicating that it was secured by the pledge of fifty shares of the Littlefield Piano Co. stock. The defendant filed an answer to the complaint asserting that he signed the note as a mere surety, that so far as he was concerned it was without consideration, that his signature was procured by fraud—all of which was known to the plaintiff when it accepted the note. The court ruled that a replication was required, and one was filed which denied the allegation of the answer. The plaintiff secured a verdict below, judgment was rendered thereon, and the defendant excepted.

██ The defendant seasonably moved for a verdict on the ground that an action of general assumpsit would not support a recovery against a surety or such an indorser as the evidence disclosed the defendant to be. This ruling is the basis of the exception first briefed. The statute makes the defendant an irregular indorser, and charges him with all the responsibilities of a general indorser. G. L. 2933. The evidence makes him an accommodation indorser, entitled to all the advantages of one so situated. But, having waived demand and notice, and the note being overdue and unpaid, he is liable thereon—other defenses aside—absolutely and unconditionally. 3 R. C. L. 1148; 8 C. J. 715. This proposition seems to be supported by the better reasoning and the decided weight of authority, though some courts say that there exists a further condition in the indorser's undertaking, namely, that the maker fails to pay. See *MacPherson* v. *Evart State Bank,* 239 Mich. 670, 214 N. W. 971; *Corley* v. *French,* 154 Tenn. 672, 294 S. W. 513. Under this view, an allegation in a special count might be required. But we hold that the defendant's undertaking was like that of a maker. So he can be sued as a maker, and by the use of the money counts. *Woodrow* v. *O'Connor,* 28 Vt. 776, 778. The motion for a verdict was properly overruled.

██ The evidence tended to show that the defendant's indorsement was procured by the fraud of Littlefield. When this evidence came in, the *prima facie* case made by the plaintiff by introducing the note, regular on its face, was sufficiently met to make it the plaintiff's duty to show by a preponderance of evidence that it was a "holder in due course," that is, that it was a *bona fide* holder, for value, and without notice of the fraud. G. L. 2921; *Howard Natl. Bank* v. *Wilson,* 96 Vt. 438, 449, 120

Atl. 889; *Land Finance Corp.* v. *Sherwin Elec. Co.*, 101 Vt. 114, 122, 141 Atl. 598.

██ The fraudulent representations relied upon by the defendant pertained to the value of the collateral offered by Littlefield, the Littlefield Piano Co., stock. In order to show the utter insolvency of that company at the time of his indorsement, the defendant introduced the bank account of that concern. From this it appeared that, while it was usually largely overdrawn, on January 5, 1929, it showed a credit balance of $2,850.85. Mr. Clark, the treasurer of the bank that carried the account, was asked if this balance was created by the deposit of $2,000. Objection being made, the defendant offered to show that this balance was caused by the deposit of a worthless note for $2,000. The offer was excluded and the defendant excepted.

The evidence was admissible. In the determination of the financial standing of the Piano Company, it was proper to show that the apparent balance in the bank was not real, but a fictitious credit allowed for a worthless note, which in due time would be charged back to the account reducing it just so much. In this respect, the balance stands no better than the note itself would. If it had appeared as an asset of the Piano Company, its true value would have been open to inquiry. But it is to be remembered that the *factum probandum* was the condition of the Piano Company on May 27, 1929, the day the defendant indorsed the note, and that in order to work a reversal, prejudice to the excepting party must appear. Nothing is pointed out to show that the worthless note was carried into any credit balance that appeared on the day specified, or to indicate that it cut any figure in establishing the financial condition of the corporation at that time; and the account showed such a persistent line of large overdrafts, a line that was almost unbroken, that it cannot be that the jury attached any particular importance to this lonely credit balance.

█ The plaintiff's position that this credit was too remote does not answer the defendant's argument. For the court ruled by implication when it admitted the account showing the credit that it was not too remote.

█ Nor did the defendant lose the benefit of his exception by a failure to except to the charge. *Berkley* v. *Burlington Cadillac Co.*, 97 Vt. 260, 269, 122 Atl. 665; *Paska* v. *Saunders,*

103 Vt. 204, 218, 153 Atl. 451; *McSweeney et ux.* v. *Dorn,* 104 Vt. 110, 158 Atl. 88.

The error, however, for the reason hereinbefore assigned does not require a reversal.

■■ The court submitted to the jury the question whether the plaintiff was a due course holder within the meaning of the statute. To this the defendant excepted on several grounds, one of which was that the plaintiff had not affirmatively pleaded the essential facts. As we have seen, the defendant's answer set up the claim that his indorsement was obtained by Littlefield's fraud. The answer also charged that the plaintiff not only knew it, but participated in it. The replication denied all this. Without expressing an opinion as to which party should have pleaded the facts, we hold that the issues of the plaintiff's being a holder in due course, for value, in good faith, and without notice were sufficiently raised by the pleadings. *Thorp & Thorp's Estate,* 75 Vt. 34, 52 Atl. 1051. Then, too, throughout the taking of the evidence the parties so indicated a satisfaction of the pleadings—the defendant being the one to give evidence of the fraud—that it should be held that any defects in the pleadings were waived. *Howard Natl. Bank* v. *Wilson,* 96 Vt. 438, 443, 120 Atl. 889; *Barre Trust Co.* v. *Ladd,* 103 Vt. 392, 401, 154 Atl. 680.

■ The defendant further says that the plaintiff did not produce evidence enough to satisfy the rule placing the burden of proof upon it. The plaintiff is a corporation. Harry Daniels is its president, and his son, H. L. Daniels, is its treasurer. There are probably other officers, and a board of directors, no doubt. Harry Daniels was the only one of these that the plaintiff offered as a witness on the question of due course ownership. His testimony tended to show that he was the one who had to do with the acceptance of the note, that it was taken for value, that he acted in good faith and knew nothing of the fraud practiced by Littlefield on the plaintiff, in short, that the plaintiff was a holder in due course as that term is defined in G. L. 2921. It is insisted by the defendant that the president is not the corporation, and that, in order to go to the jury, the plaintiff should have made it appear that the other officers of the plaintiff or at least some of them were ignorant of Littlefield's fraud on the plaintiff. But it was not, as a matter of law, necessary to call the other officers. The ques-

tion under discussion, in all of its features, was for the jury. The mere fact that the plaintiff did not call other officers as witnesses may have been for consideration by the jury, but it did not preclude a finding of the essential facts. *Des Moines Savings Bank* v. *Arthur,* 163 Iowa, 205, 143 N. W. 556, Ann. Cas. 1916C, 498, 503, and *First National Bank* v. *Anderson,* 144 Minn. 228, 175 N. W. 544, 545, are directly in point. In the latter the statement that "it was not necessary for the plaintiff to hale all the officers, directors and agents of the Citizens' State Bank into court and to call the roll and ascertain whether any of them might know of the defense or equities existing," was approved.

 There was no error in the refusal of the court to charge the jury to the effect that, if Littlefield, in order to induce the defendant to indorse the note, made representations as to the Piano Company stock that were untrue, the defendant should recover, though Littlefield believed them to be true, unless the plaintiff had shown that it was a holder in due course. In support of his exception to this ruling, the defendant calls attention to the language of G. L. 2924, and insists that a false statement, however innocently made, that induced his indorsement was such an "unlawful means" as is therein referred to. But as far as involved in this case, there is no rule of law that makes an innocent misstatement "unlawful." There are certain cases in which such an instruction would be proper, but this case is not one of them. There is no evidence here that indicates an honest mistake on the part of Littlefield. So the instruction was not applicable to the evidence. Then, too, generally speaking, no misrepresentation is fraudulent (or unlawful) unless made with knowledge of its falsity. *Caldbeck* v. *Simanton,* 82 Vt. 69, 71 Atl. 881, 20 L. R. A. (N. S.) 844.

 The court charged the jury on the subject of "sales talk" and "puffing," and instructed them that these, though false, were not the basis of "actionable fraud or a basis of a defense to an action." The defendant excepted.

That the representations of Littlefield with reference to the financial standing of the Piano Company were not mere "sales talk" or "puffing" we quite agree. If the court instructed the jury or gave them to understand that they were such, it was error. The representations as testified to by the defendant, and not contradicted in any way, were to the effect that by its last

inventory the Littlefield Piano Co. had a net surplus of $30,000, that since then $20,000 had been added to the surplus making in all, $50,000, and that its stock was ''as good as gold.'' These were all statements of fact. Even the last one was a statement of fact. It amounted, in connection with the other statements, to an emphatic assertion that the corporation had assets enough to make its stock worth dollar for dollar, or better. A representation that a note is ''good'' means that its maker is financially responsible. *Weeks* v. *Burton*, 7 Vt. 67, 70. A representation that a stock is as ''good as gold'' when asserted by one who would be expected to know and made with the obvious intent that it was to be relied upon as a statement of fact, is, in law, a statement of fact, *Downing* v. *Wimble*, 97 Vt. 390, 393, 123 Atl. 433, and cases cited, and means just what we have indicated above. The instruction complained of should have been omitted, but we do not think the jurymen were misled. In close connection with the charge on this subject, the court had instructed the jury that if Littlefield made the statements, or any one or more of them, and they were false, and he knew they were false, fraud was made out. The statements referred to by the court were those testified to by the defendant as hereinbefore specified. At no place in the charge did the court submit to the jury the question of trade talk or puffing. We are satisfied that no prejudice resulted to the defendant by the allusion to those subjects.

 By the terms of the note, interest was payable semiannually. The allowance of interest accordingly was correct. Such a provision is not usurious. However it might have been under our statute which formerly provided that ''no person shall take, directly or indirectly, more than the value of six dollars for the forbearance of one hundred dollars for one year'' (Gen. St. 1863, ch. 79, § 3), since the passage of No. 61, Acts of 1866, making the statute read as it does now, ''The rate of interest, or sum allowed for forbearance or use of money, shall be six dollars for one hundred dollars for one year,'' G. L. 2842, there is no reason why the parties may not stipulate for a computation of interest by semi-annual rests. The statute merely fixes the rate. It does not prescribe a method of computation. That a contract stipulating for semi-annual interest is not usurious is a proposition supported by many cases. Reference may be made to *Goodrich* v. *Reynolds*, 31 Ill. 490, 83 A. D.

240; *Goodale* v. *Wallace*, 19 S. D. 405, 103 N. W. 651, 117 A. S. R. 962, 9 Ann. Cas. 545; *Cook* v. *Courtright*, 40 Ohio St. 248, 48 A. R. 681; *Brown* v. *Johnson*, 43 Utah, 1, 134 Pac. 590, 46 L. R. A. (N. S.) 1157, Ann. Cas. 1916C, 321; *Blanchard* v. *Dominion Natl. Bank*, 130 Va. 633, 108 S. E. 649, 27 A. L. R. 78; note to *Bank of Newport* v. *Cook* (60 Ark. 288, 30 S. W. 35, 29 L. R. A. 761), 46 A. S. R. at page 189; *Myer* v. *Muscatine*, 1 Wall. 384, 17 L. ed. 564; *Federal Const. Co.* v. *Wolfson*, 186 Cal. 267, 199 Pac. 512, 29 A. L. R. 1098, and note.

*Judgment affirmed.*