GEORGE T. ROBINSON and Another v. WADE BLAKER and Another.[1]

January 17, 1902.

Nos. 12,772—(121).

**Principal and Agent—Usury.**

    A principal who intrusts an agent with a definite sum, for the purpose of making a loan to a person known to such principal, is responsible for the agent's unlawful exactions in violation of the usury laws, and is legally charged with knowledge of the conduct of such agent in making the loan.

**Conclusions not Sustained by Findings.**

    Upon the findings of the trial court in this case, it is *held* that they do not support the conclusions of law, and a new trial must be ordered for that reason.

Action in the district court for Itasca county to cancel a real-estate mortgage. Defendant John P. Sims alone appeared and answered. The case was tried before Holland, J., who found in favor of defendant. From a judgment entered pursuant to the findings, plaintiffs appealed. Reversed, and new trial granted.

*S. F. White, Frank F. Price* and *Price & Spear,* for appellants.

*C. L. Pratt,* for respondent.

[1] Reported in 88 N. W. 845.

LOVELY, J.

This is a suit by plaintiff and wife to restrain the foreclosure of a mortgage upon the ground that it was given to secure a usurious loan of money. A note was made by plaintiff Robinson to defendant Blaker for $500, but whatever money was loaned in fact came from defendant Sims, and was furnished through Blaker. In his answer Sims alleges that Blaker had theretofore agreed to guaranty to Sims any and all loans Blaker might make for him, and that, if Blaker exacted or received any illegal amount for making such loans, it was so received without knowledge or sanction of Sims. The action was contested solely against Sims, Blaker being in default.

There is very little controversy over the facts. Plaintiff desired to procure the loan of a sum of money to enter one hundred twenty acres at the government land office under the "timber and stone act." He had a talk with Blaker, who said that he could get him the money, and at the proper time did furnish what was needed at the land office to enable plaintiff to make the entry and pay all expenses in so doing. Robinson's account of the transaction with Blaker is not controverted. He received no more than $400, but gave a note for $500, secured by mortgage to Blaker on the land so entered, for the face of the note, for one year, at ten per cent. There can be no doubt that, as between plaintiffs and defendant Blaker, the transaction was usurious, or that Blaker obtained security for a loan for $100 more than the amount which Robinson received. Sims denies that he knew anything of the usurious bonus, but says that he had turned over to Blaker for Robinson the full sum of $500. The connection between Blaker and Robinson thus becomes the important element in establishing the responsibility of Sims for the acts of his agent, upon which the trial court held that while Sims made the loan through Blaker, who acted for him, the loan was not unlawful.

Sims was asked on his examination if he had ever loaned any money to the plaintiff Robinson. He answered that he had, but gives only this one instance, and states that Blaker asked him for the loan for Robinson, when he (Sims) said he would loan Robinson $500 if the claim was all right,—if it was good security. Blaker

then said, "I will guaranty it as all right." Sims then replied, "I will furnish the money." Sims states that he had a previous talk with Robinson about loaning him the money, that Robinson then wanted $500, but that he never authorized Blaker to charge a usurious bonus. Robinson denies having any conversation about the loan with Sims.

The court found that Blaker, at the instance and request of plaintiffs, loaned to them a certain sum of money, and received as consideration for the furnishing of such sum $100, in addition to the ten per cent. interest on the loan; that Blaker thereafter took a note and mortgage covering the land described in the complaint, to secure the payment of the same,—the note and mortgage being made to Blaker, and immediately assigned to Sims. It was further found by the court that the money so loaned through Blaker was the personal property of defendant Sims, and made by and for such defendant; that the note and mortgage were made in the name of Blaker pursuant to an agreement between both defendants whereby Blaker was required to guaranty the loan, and for no other purpose; that Sims never gave Blaker authority to exact more than ten per cent. per annum for the loan, and that such additional sum was exacted by Blaker without the knowledge of Sims, who never received any portion of it, and did not ratify such exaction; that plaintiffs knew that the money was not loaned to them by Blaker, and that the same was the money of Sims. Interwoven in the above facts so found by the trial court is this further independent finding: "That said Blaker was not at the time said note was made the general agent of said Sims for the purpose of making said loan." The court, upon these findings of fact, as a conclusion of law, finds "that said transaction was not usurious," and ordered judgment against the plaintiffs.

It is impossible, upon concededly correct principles, to hold that the principal who authorizes his agent to make a loan to a certain party for a specific amount can avoid the effect of his agent's conduct, whether the same is known or unknown to him. In a well-considered case in this court it has been held that, where a general agent has authority to make loans for his principal with money intrusted for that purpose, the assumption in such case

ought to be that, what the agent assumed to do for the principal, was done by his authority, and, if any facts exist which would relieve him from responsibility from the unlawful exactions of his agent, he ought to prove them. Lewis v. Willoughby, 43 Minn. 307, 45 N. W. 439. It is claimed that, upon proper findings, such facts as would relieve the principal from the usurious exaction of his agent were established here. But the case at bar is distinguishable from previous cases in this court referred to in the opinion last cited, where the agent was merely intrusted with money to loan at legal interest to unknown parties, and exacted a bonus for himself as a condition of making the loan, without the knowledge or authority of the principal, who never ratified the act, nor derived any benefit therefrom.

It would seem from the finding of the court in this case that the defendant Blaker was not the general agent to make the loan; that the learned trial court relieved the principal because he did not know of the exaction of Blaker, derived no benefits therefrom, and never ratified the same. But it was also found that Sims knew that the money was to go to Robinson, the purpose for which it was intended, and was informed by Blaker of the specific amount desired by plaintiffs, and claims to have furnished that definite sum. There is no charm in the use of the words "general agent," regardless of the particular facts involved, which will relieve the principal of the unauthorized acts of his middleman. The specific characteristics of this loan, as found by the court and admitted by the defendant Sims, should not permit the latter to relieve himself of the acts of Blaker; for where a principal intrusts a definite sum of money to an agent, to be loaned to a known person, merely leaving the details of the transaction to such agent, he will be held responsible for his acts, and charged with knowledge of his conduct. The rule referred to in the cases cited in Lewis v. Willoughby, supra, adopted to protect an innocent principal as against fraud practiced upon him by his own agent, cannot be extended to cover this case. To do so would violate the general principles of the law of agency, and abrogate the rule of respondeat superior, as well as permit an available method by which the usury laws could be defeated with impunity.

While we cannot, upon the findings of fact, sustain the conclusions of law adopted by the learned trial court, we are unwilling, in view of the obscure and somewhat contradictory nature of such findings, as interpreted by the evidence, in the respects stated, to order judgment absolute for the plaintiffs, but we are of the opinion that justice will best be subserved by another trial of all the issues involved. ·

It is therefore ordered that the judgment of the trial court be reversed, and a new trial granted.