## H. B. BLACKEY v. CHARLES L. ALEXANDER AND MARGARET C. GRAY.[1]

October 19, 1923.

No. 23,512.

**Lender not responsible for usurious commission exacted by broker.**

1. A lender of money, innocent of all intent to exact a usurious return, *held* not responsible for the act of a loan broker in exacting from the borrower an unauthorized commission, which if added to the interest would make the loan usurious.

[1]Reported in 195 N. W. 455.

**Case limited.**
   2. Robinson v. Blaker, 85 Minn. 242, limited.

**Attorney's right to compensation forfeited, when.**
   3. An agent, particularly an attorney-at-law, who is unfaithful to his trust and guilty of fraud on his principal or client, thereby forfeits his right to compensation.

**Amount retained may be recovered by principal.**
   4. If, in such a case, the agent has been paid or has retained from the moneys of his principal, the amount of such compensation, the same may be recovered by the principal or his assignee.

Action in the district court for Otter Tail county to cancel a note for $1,000 and the mortgage securing it. The case was tried before Parsons, J., who when plaintiff rested denied separate motions of defendants to dismiss the action, made findings and ordered that the action be dismissed as to defendant Gray and ordered judgment in favor of plaintiff for $88.45 against defendant Alexander. From an order denying his motion for amended and additional findings or for a new trial, plaintiff appealed. Affirmed.

*George W. Frankberg*, for appellant.

*Charles L. Alexander* and *N. L. Field*, for respondents.

STONE, J.

This is an action to set aside because of alleged usury a note for $1,000 and the real estate mortgage securing it. Plaintiff is the immediate successor in interest of the mortgagor, not only as the owner of the mortgaged premises, but also as the mortgagor's assignee of all causes of action arising out of the note and mortgage in suit. The case was tried to the court. There were findings for defendants, except as hereinafter indicated, and, from the denial of a new trial, plaintiff appeals.

The mortgagor was John A. Blackey, a brother of plaintiff and co-heir with him to the real estate in question. The mortgage covered John A. Blackey's undivided interest therein. In the probate proceedings resulting in the distribution to them of their interests, defendant Alexander acted in his professional capacity as attorney

for the Blackey family, including plaintiff and John A. Blackey. There had been former negotiations for a loan on the latter's interest in the property which came to naught, but on September 2, 1921, defendant Alexander wrote to John A. Blackey (then residing in New Hampshire), a letter in part as follows:

"If you want the $1,000 loan at this time I can furnish it for you at once. In fact so as to save time and owing to the fact that I will have to be out of town for ten days or two weeks I am going to enclose you the papers herewith and then you can execute them if you want the loan. It is the best I can do and on the following terms: I will have to have a $100 commission on this and the party that I am getting the loan of wants interest semi-annually but wants the papers written at 8% and a fifty dollar commission is the best I can do. The examination of the title for the three abstracts will come to $30 and the three abstracts about $45 recording and registration tax $15 drawing papers and those affidavits $10. This makes an expense account of $250 including my commission and the other commission, abstracts and expense.   *   *   *

"It is the best I can do and it is only luck that I am able to get this, and if you don't want it on these terms I will have to give the matter up.   *   *   *

"The 8% and the $50 is about the same as offered before or 10%. I presume there is fire and tornado insurance, but if not will have to be."

The proposed lender, represented in the letter as demanding "8% and a fifty dollar commission," was defendant Margaret C. Gray, a sister-in-law of defendant Alexander.

Now that we have quoted the material portion of Alexander's letter to John A. Blackey, and in order to make the situation clear, we are compelled to state that the representation that Mrs. Gray wanted in addition to interest at 8 per cent, "a fifty dollar commission" was false and intentionally so, and made for the purpose of procuring to Alexander, from his own client, the additional compensation. It was a fraud and a successful one. It is unrelieved by extenuating circumstances and stands admitted by the perpetrator. Peculiarly enough he now has no more contrite characterization for his offense

than the statement made somewhat callously, that on this occasion he "slopped over." In order that the court's position concerning such a matter may not be misunderstood, it must be stated, as the fact is, that the offense has already received attention at the hands of the Board of Law Examiners and defendant Alexander, the perpetrator, has been disciplined to the extent by them thought needful.

John A. Blackey accepted the proposition made by Alexander and the loan was consummated accordingly. Its period was two years. Interest on $1,000 at 8 per cent for two years, plus the spurious $50 commission, aggregates $210, which is $10 more than interest at 10 per cent; hence the charge of usury.

Defendant Alexander is also an abstractor of titles and was not content with overreaching his client on the $50 item. The trial court found, and very properly, that he made additional overcharges, aggregating $38.45. They represent utterly useless tax and judgment search certificates, a charge of $10 for drawing the papers and an item of money retained for the mortgage registry tax and to cover certain affidavits. The result below was that the note and mortgage were sustained as against the charge of usury, but judgment was ordered against defendant Alexander for $88.45, consisting of the $50 commission item and $38.45 of overcharges. That is, Alexander was held liable for what he had purloined from his client.

We go now to the question of usury. If there was usury, the result, under our drastic and inflexible statute, the effect of which has never been denied by this court, would be the invalidation not only of the note and mortgage but also of the debt. That would penalize defendant Gray in the sum of $1,000 for an offense of which she is innocent.

The decision of the learned trial judge was in her favor because he was convinced that, for the transaction in question, defendant Alexander was the agent of John A. Blackey and not her agent. It is true that Mrs. Gray was for the time being making her home with the Alexanders. There was a close family relationship, as a result of which she had great confidence in the judgment of Alexander, her brother-in-law. The evidence possibly would justify a finding of

his general agency for Mrs. Gray. On the other hand, it supports the contrary conclusion that, in the transaction under review, Alexander was the agent of John A. Blackey. That view has such substantial support in the record that we cannot interfere with the resulting finding.

Appellant relies upon Robinson v. Blaker, 85 Minn. 242, 243, 88 N. W. 845, 89 Am. St. 541, wherein the lender was held responsible for the act of his agent in taking usury. In that case, however, the facts were peculiar and different from those now before us. There the note and mortgage were taken in the name of the agent who transferred them with his guaranty to the principal. On that ground, the case was distinguished in Bovee v. Butters, 92 Minn. 149, 99 N. W. 641. In any event Robinson v. Blaker must be limited to the unusual facts there before the court. In view of the highly penal effect of our usury statute, the rule of that case cannot be extended so as to penalize a principal who is so clearly innocent of all offense as is defendant Gray.

In Lewis v. Willoughby, 43 Minn. 307, 45 N. W. 439, the situation was such as to require proof, in order to exonerate the lender, that he was not a willing party to the usury. He did not testify, and there was "not a particle of evidence that the bonus was exacted without his knowledge or consent." We agree with the learned trial judge that this case is ruled by Jordan v. Humphrey, 31 Minn. 495, 18 N. W. 450, and Bovee v. Butters, supra.

The case has proceeded thus far, on the part of plaintiff, on the theory of usury. There was good ground for suspecting it. Plaintiff was amply justified in raising and trying out that issue. If the plea of usury had been successful, the result would have been the invalidation of the entire transaction. Under that theory there was no reason for attacking Alexander's right to retain his stipulated fee. Now that we have been compelled to deny the major relief sought by plaintiff, it would be unjust, particularly as against a confessedly unfaithful attorney, to deny any minor relief justified by the pleadings and evidence. The record shows and defendant confesses such fraud on his part as to have forfeited *all* his compensation. An agent, particularly an attorney-at-law, who is so unfaith-

ful to his principal as defendant Alexander has been, earns nothing. His right to compensation is lost. Venie v. Harriet State Bank, 146 Minn. 142, 178 N. W. 170; Wadsworth v. Adams, 138 U. S. 380, 11 Sup. Ct. 303, 34 L. ed. 984; Mechem, Agency, (2d ed.) § 1588.

Here the agreed fee was not paid to Alexander by John A. Blackey. It was retained by the former out of the loan, and inasmuch as the latter concededly was in ignorance of the fraud, his assignee, the plaintiff, is entitled to recover the $100 in addition to the other sums allowed by the trial court.

The order appealed from is affirmed and the case remanded accordingly, but, if plaintiff moves for amended findings and conclusions concerning the $100 fee retained by defendant Alexander, this affirmance will not be a bar to awarding such additional relief as to the learned trial judge may seem just.

While other counsel was on the brief with him, Mr. Alexander seems to have been its principal author. He made the only argument here. No statutory costs will be allowed in this court.