[1] Reported in 9 N.W.2d 245.
On March 20, 1941, the probate court of Hennepin county disallowed the claim of W.L. Hursh, hereinafter called appellant, in the sum of $3,310.86, filed in the estate of Ruth I. Lee, deceased, for services rendered decedent in connection with her beneficial interest in a trust estate. He appealed to the district court, and on December 19, 1941, that court made findings affirming the order of the probate court and disallowing appellant's claim. He moved for amended findings of fact or a new trial and appealed from the order denying his motion.
Some time prior to 1925, appellant, a practicing attorney, was employed by one John Clemmings, now deceased, for the purpose of preparing his last will and testament. He had been acquainted with Clemmings for over 20 years and had represented him in other legal matters. The will provided for the creation of a testamentary trust and designated Clemmings' two children, Ruth I. Lee and Grover E. Clemmings, as beneficiaries. An express purpose of the trust was to provide an income for these beneficiaries during their lifetime, or, in the event of the death of either, that the income should go to the children of such decedent. To this end a provision was incorporated therein forbidding the beneficiaries to encumber, transfer, assign, or otherwise dispose of any of the income from the trust prior to the actual distribution thereof. The will was admitted to probate in 1926, and appellant *Page 450 
served as attorney for the Minnesota Loan Trust Company, the executor named therein. For these services he was allowed an attorney's fee of $4,000. In 1927 he presented a petition to the district court for the appointment of trustees to carry out the trust provided for by the terms of the will. The Minnesota Loan Trust Company, Grover Clemmings, one beneficiary, and R.P. Lee, husband of Ruth I. Lee, the other beneficiary, were appointed as such trustees. In August 1934 the Minnesota Loan Trust Company (then the Northwestern National Bank Trust Company) resigned as trustee and on August 31, 1934, appellant was appointed as successor trustee to act jointly with Grover Clemmings and R.P. Lee as cotrustees.
After its appointment as one of the three trustees, the Minnesota Loan Trust Company kept and maintained the books, records, and files pertaining to the trust at its corporate office. The corpus of the estate consisted largely of real estate located in the city of Minneapolis. In administering the trust, the Minnesota Loan Trust Company, as trustee, and with the knowledge and consent of the cotrustees, set up on the books and records of the trust a so-called cash depreciation reserve account. This fund accrued from income from the trust properties and was computed upon a depreciation thereof in the percentages allowed for federal income tax deductions. After appellant's appointment as trustee, the books, records, and files of the trust were maintained in his office, and he thereafter supervised the necessary bookkeeping and took an active part in the management and control of the trust properties. In addition to qualifying and serving as such trustee, he assumed the duties and responsibilities of attorney for the trust and received for his duties as trustee and certain legal services the sum of $125 per month paid by the trust. These fees totaled more than $10,000 at the time of this action. The practice of setting up a depreciation reserve account on properties in the trust was continued after appellant's appointment as successor trustee and until December 1939, except that the amount was left in the general fund as part of the corpus of the trust instead of being *Page 451 
segregated as a separate cash depreciation account. One Harvey, an auditor and certified public accountant, employed by the trust prior to appellant's appointment, made up a new set of trust records for appellant's use. By December 1939 there had accrued in the depreciation reserve account the sum of $25,077.88, plus slight additional increases by reason of interest accumulations and profits.
On February 10, 1936, appellant entered into the following agreement with the two named beneficiaries:
"Minneapolis, Minnesota,
"February 10, 1936.
"Mrs. Ruth I. Lee 2217 Nicollet Avenue Minneapolis, Minnesota, and
"Mr. Grover E. Clemmings 4717 Nicollet Avenue Minneapolis, Minnesota
"Dear Madam and Sir:
"It is my understanding that you desire to have me investigate and examine the various accounts of the Trustees of the Trust under the Will of John Clemmings, Deceased, covering the period from the beginning of the Trust to December 31st, 1935, inclusive, with a view to determining whether anything is still due you or either of you from said Trust, for said period; and in case it appears from said examination that anything is still due you or either of you, to bring the matter to the attention of the Trustees of said Trust and the Court, and obtain for you whatever may be due you or either of you from said trust; and that your proposition is that for my services in such matter, you will pay me one-third of whatever amount may be found to be still due you from said trust, for said period; and may be paid over to you or recovered for you for said period.
"I hereby agree to the foregoing proposition and will proceed *Page 452 
at once with the matter on receiving your confirmation of this understanding.
"Yours truly
"W.L. Hursh.
"WLH:LR
"We and each of us hereby confirm the foregoing understanding and agree to the terms thereof.
"February 12th, 1936.
"Ruth I. Lee,
"Grover E. Clemmings"
A considerable period of time elapsed before appellant performed any service under the contract. He testified that he later began an investigation of the trust records and the law.
In November 1938, Mrs. Lee died, and R.P. Lee, her husband and one of the trustees herein, was appointed administrator of her estate. Appellant was thereupon engaged as attorney for the administrator in the probate of Mrs. Lee's estate. Administrator Lee did not know of the existence of the foregoing agreement between appellant and his deceased wife, and appellant, although accepting employment as attorney for the administrator, failed to inform him of it. On May 4, 1940, appellant prepared and presented a petition to the district court for an order authorizing the transfer to the beneficiary Grover Clemmings and the estate of Ruth I. Lee, deceased, of the funds accumulated in the so-called depreciation reserve account. Such an order was made by the court without any disclosure or explanation by appellant to the court, to the administrator of the estate of Ruth I. Lee, or to other interested persons representing the minor children of Grover Clemmings and Ruth I. Lee that he claimed a one-third interest in the funds to be transferred to the estate of Ruth I. Lee by virtue of his agreement of February 10, 1936. In September 1940, administrator Lee called at appellant's office for the purpose of collecting the funds due the Ruth Lee estate by reason of the foregoing transfer and order of distribution. At that time appellant had prepared two checks, one for $3,310.86, representing his *Page 453 
one-third interest in the fund so transferred, and another for $4,185.09 for the balance due the Ruth I. Lee estate. Administrator Lee protested the payment of the fee to appellant, who then apprised him for the first time of the February 10, 1936, agreement. Shortly thereafter appellant severed his relations as attorney for the administrator and filed his claim for services for a like amount in the estate of Ruth I. Lee. This claim was in lieu of the check for $3,310.86, which he nevertheless retained. The probate court disallowed his claim, and his appeal to the district court followed. Immediately after hearing the contest on the claim, the district court also heard the petition of respondent, as administrator of the Ruth Lee estate, in a summary proceeding for an order requiring appellant to turn over to respondent the $3,310.86 represented by the check. The court so ordered, and appellant returned this sum with interest.
Appellant's numerous assignments of error all relate to the four main issues raised on his appeal and discussed in the briefs, viz.:
(1) Is the contract prohibited by the express terms of the will of John Clemmings, deceased?
(2) Notwithstanding any prohibitory provisions in the will, is the contract of February 10, 1936, a valid one and enforceable under the facts here presented?
(3) If the contract is unenforceable, may appellant nevertheless recover the reasonable value of his services on aquantum meruit basis?
(4) Are the beneficiaries estopped from questioning the validity of the contract?
1. The last will and testament of John Clemmings contained the following paragraph:
"TENTH: No title in the trust estate hereby created or in the income accruing therefrom or in its accumulations shall vest in any beneficiary, and no beneficiary shall have the right or power to transfer, assign, anticipate or encumber his or her interest in said estate or the income therefrom prior to the actual distribution *Page 454 
thereof by said Trustee to said beneficiary, and neither the income nor principal shall be liable in any manner in the possession of the Trustee for the debts, contracts or engagements of any of the beneficiaries. No beneficiary shall be permitted to appoint any agent or attorney in fact, except as may be specially permitted by the Trustee, to collect or receive such income or principal if such agent or attorney in fact has directly or indirectly advanced any of such income or principal to such beneficiary."
The lower court found that the contract in question violated the foregoing spendthrift provision of the will. We agree with that finding. It is well established that the creator of a trust may secure the enjoyment of it to the objects of his bounty by providing that it shall not be alienated by them or become subject to be taken by creditors. 6 Dunnell, Supp. § 9886c; Erickson v. Erickson, 197 Minn. 71, 266 N.W. 161,267 N.W. 426; First Nat. Bank v. Olufson, 181 Minn. 289,232 N.W. 337. Such a clause has been held to apply to an attorney's claim for services rendered a beneficiary under a trust. In McKeown v. Pridmore, 310 Ill. App. 634, 35 N.E.2d 376, the trustee of a spendthrift trust refused to make the payments due a beneficiary under the trust. The beneficiary employed an attorney on a contingent fee contract. He was successful in a suit against the trustee and obtained payments for the beneficiary. The court held that the attorney did not have a lieu on the proceeds, since the spendthrift clause was effective to prevent the assignment of any interest of the beneficiary, and the attorney's lien, which was in effect an assignment of an interest, could not attach thereto. The court said (310 Ill. App. 647, 35 N.E. 381):
"We do not find any support for the argument that an assignment by a beneficiary for the purpose of protecting his attorney in his fees, of such beneficiary's interest in a trust protected by a spendthrift clause, stands in a different category than other assignments."
We subscribe to that doctrine and hold that the contract entered *Page 455 
into between appellant and the beneficiaries in the case at bar was in direct violation of the spendthrift clause therein. For that reason, the contract is of no legal effect whatever. Appellant asserts, however, that the contract was merely one to pay over money after it was received by the beneficiary. Without conceding that this would make the contract any the less objectionable, the language of the agreement does not sustain this contention. It provides that appellant was to receive one-third of whatever amount "may be paid over to youor recovered for you [the beneficiaries]." Appellant, moreover, contends that although the trust provides that the interest of the beneficiaries shall not be subject to creditors' claims, yet when a beneficiary, for value, agrees to transfer his interest and fails to do so, the beneficiary is liable for breach of contract, and, although creditors cannot obtain satisfaction out of the beneficiary's interest under the trust, they may reach such property as the beneficiary may own other than trust property. A complete answer to this contention is found in the fact that appellant sought to satisfy his claim filed in the probate court out of the very trust property involved in the trust estate under consideration here.
2. Had the will not contained a spendthrift clause, there is an even more insurmountable obstacle to appellant's right to recover on his claim presented in the probate court. On February 10, 1936, the date of the agreement in question, appellant was an active trustee engaged in the administration of the trust estate. From the date of his appointment as trustee on August 31, 1934, he had assumed a managing role by maintaining in his office all books and records relating to the trust and exercising considerable supervision over the properties in the trust. As attorney for the trust estate he had counseled with and advised his cotrustees and the beneficiaries with respect to problems arising from time to time having to do with the several tenants occupying the trust property, the rentals thereof, and improvements and repairs to be made. He had been acquainted with the trustor, John Clemmings, for many years, and the knowledge he gained by serving as *Page 456 
trustor's personal attorney in the preparation of his will, together with the information he received while acting as attorney for the Minnesota Loan Trust Company, the executor named therein, plus his services rendered in setting up the trust estate in the district court, were such as intimately to acquaint him with the affairs of the trust and to invite and encourage the confidence of the children of the trustor, the beneficiaries under the will, to a degree where they naturally relied upon his judgment and advice. The evidence discloses an extremely intimate professional and fiduciary relationship existing at all times between appellant and the beneficiaries, and it is difficult for us to conceive of a situation where an individual acting in the dual capacity of attorney and trustee could have a more confidential relationship with the charges of his trust than that which existed in this case. By entering into this agreement, appellant assumed an additional status — that of personal attorney for the beneficiaries. He agreed, for a contingent fee of one-third of the amount recovered, to "investigate and examine the various accounts" of the trustees from the beginning of the trust to December 31, 1935, to determine whether any funds were available in the trust for the benefit of the beneficiaries. From August 31, 1934, to December 31, 1935, he was the dominant trustee, and the conclusion is inescapable that under the contract of employment he proposed, during that period at least, to engage in an investigation and examination of his own records and accounts as trustee. He testified that upon his appointment as trustee he assumed control and supervision of the books and records of the trust as set up by the auditor thereof, and that the so-called depreciation reserve account was set up and continued on the trust records until 1939; and, further, that he had had conversations with the auditor and with his cotrustees regarding the purpose of the account. True, the practice had been discontinued of setting up a separate cash depreciation account, but the money allocated for depreciation purposes was added to the general fund as part of the corpus of the trust. This bookkeeping change did not alter the beneficiaries' right to the fund, *Page 457 
and this appellant knew or should have known if he was faithfully administering his trust. Under these circumstances, appellant entered into the agreement with the beneficiaries whereby he accepted employment as agent and attorney to investigate and examine the books and records of the trust he was sworn to protect, and as a consideration therefor he was to receive and be personally enriched to the extent of one-third of the amount found to be due the beneficiaries under the trust. By this agreement, he placed himself in a dual relationship to the trust, with personal interests opposed to and conflicting with his duties as trustee. For a consideration, he agreed to use the knowledge of the affairs of the trust estate which he had gained by virtue of his appointment and his fiduciary relationship to the beneficiaries to determine what, if any, moneys were available to them.
In Lancaster County Bank v. Marshel, 130 Neb. 141, 153,264 N.W. 870, 476, the court, quoting from Nebraska Power Co. v. Koenig, 93 Neb. 68, 139 N.W. 839, said:
"It is firmly established, both by English and American courts, that a trustee is bound to perform faithfully the duties relating to his trust, and that in doing so he cannot allow his own interests to interfere. If he unites his personal and representative capacities, he confuses transactions which the law requires him to keep separate and distinct. If he attempts to acquire an individual interest in the subject-matter of his trust or agency, he creates a temptation to serve himself at the expense of the beneficiary or principal, and enters a realm where his secret purposes with reference to trust property or interests may escape judicial scrutiny."
Appellant's testimony is vague and unimpressive as to the actual work done and services performed. He testified: "I worked on the matter from time to time — in the winter of 1937 and 1938 — I couldn't tell just when it was, but I satisfied myself that it should not be set up —"
The sound and equitable principle requiring of a trustee a degree of loyalty to and fair dealing with his cestui que trust far *Page 458 
beyond and above that displayed in business transactions in the workaday world has been preserved from earliest English common law.
"Equity will scrutinize dealings between the fiduciary and his cestui que trust. And whenever such dealings are the basis of a claim by the fiduciary, the burden is on him to show that they were fair, made in good faith, upon an adequate consideration and a full understanding." 6 Dunnell, Supp. § 9937; King v. Remington, 36 Minn. 15, 29 N.W. 352; Boyum v. Jordan, 146 Minn. 66, 178 N.W. 158.
"A trustee cannot make any private profit out of his trust. * * * The fiduciary character of his position precludes him from taking any advantage of his influence as trustee, or of any information acquired by reason of his trust, for purposes of private gain." Id. Dig., Supp. § 9937, and cases there cited.
In discussing this principle, the late Justice Cardozo, in "Growth of the Law," p. 96, said:
"Who can doubt that courts of equity in enforcing the great principle that a trustee shall not profit by his trust nor even place himself in a position where his private interest may collide with his fiduciary duty, have raised the level of business honor, and kept awake a conscience that might otherwise have slumbered?"
In Carpenter v. Taylor, 164 N.Y. 171, 58 N.E. 53, the defendant executed and delivered to plaintiff a general assignment in trust for the benefit of his creditors. After taking an inventory, plaintiff and defendant assumed that there might be a surplus after paying all debts. About a month after the trust property was vested in plaintiff as trustee, he obtained from defendant the execution of another written instrument under which defendant agreed that in the event of such a surplus he would pay plaintiff, in addition to his legal fees and commissions, the sum of 15 percent on all surplus sums up to $5,000 and ten percent on anything remaining. Defendant attacked the validity of the agreement *Page 459 
on the ground that there was no consideration for it in view of the fact that the trustee obligated himself to do that which he was already required to do, i. e., administer the trust to the best of his ability, and also on the ground that it was against public policy and therefore void. In holding the agreement to be invalid, the court said (164 N.Y. 177, 58 N.E. 55):
"It is argued by the learned counsel for the plaintiff that since his client managed the trust with such success as to leave a surplus for the assignor the agreement should be sustained. But that is precisely what he agreed to do when he assumed the trust, and what he was bound to do by law. This new promise by the plaintiff to do something which he was already bound to do produced no fresh advantage to the defendant or detriment to the plaintiff. * * *
"We think, also, that the agreement is invalid on the ground of public policy. A trustee who holds the title to property for the benefit of others cannot use his position for his personal advantage. He cannot make profit for himself in the execution of the trust."
Thus in the instant case, by his agreement to obtain for the beneficiaries the additional income, appellant was agreeing to do that which his trust obligation already required of him. If they were entitled to the income under the provisions of the trust, it was his duty as trustee so to administer his trust as to effectuate that purpose. If there were doubtful questions presented as to whether a part of the estate should constitute the corpus or income of the trust property, it was his duty to call upon the court for an interpretation of the trust provisions in order to carry out the intentions of the trustor. If he believed that he had rendered extra or special services justifying additional compensation, he should have applied to the court for an allowance of additional fees. By such orderly and judicious procedure all parties would have been adequately protected. By his conduct in entering into the agreement in question he forfeited his right to compensation and cannot be heard now to complain. *Page 460 
The lower court found that appellant knew of the existence of the depreciation reserve account at the time of the execution of the agreement but did not make frank and full disclosure to the beneficiaries; that he acted in two incompatible positions as trustee and attorney for the beneficiaries; and that there was a lack of good faith in the execution of the agreement rendering it invalid and of no effect. The testimony adequately supports these findings.
3. Appellant urges, however, that he is entitled to compensation for these additional services regardless of the contract. Our court has denied compensation to a trustee who has not faithfully performed his duties. In re Trusteeship under Will of Rosenfeldt, 185 Minn. 425, 241 N.W. 573. This rule is well established elsewhere. Munro v. Smith (1 Cir.) 259 F. 1; Eaton v. Robinson, 19 R.I. 146, 31 A. 1058, 32 A. 339,29 L.R.A. 100; Backus v. Finkelstein (D.C.) 23 F.2d 357; Little v. Phipps, 208 Mass. 331, 94 N.E. 260,34 L.R.A.(N.S.) 1046.
It is equally well settled that an attorney at law who is unfaithful in the performance of his duties forfeits his right to compensation. An attorney is an officer of the court, sworn to aid in the administration of justice and to act with strict fidelity to both his clients and the courts. Unquestioned fidelity to their real interests is the duty of every attorney to his clients. When a breach of faith occurs, the attorney's right to compensation is gone. Davis v. Swedish-Am. Nat. Bank,78 Minn. 408, 80 N.W. 953, 81 N.W. 210, 79 A.S.R. 400; Blackey v. Alexander, 156 Minn. 478, 195 N.W. 455. There can be no recovery by appellant, therefore, on the basis ofquantum meruit, for by his conduct he has forfeited his right to compensation.
4. Appellant finally urges that the beneficiary ratified the transaction. Although he designates his fourth defense as estoppel, it is clear in his discussion that he refers to the defense of ratification. He maintains that because the beneficiary consented to the agreement and received the benefits thereof she has ratified the transaction and cannot, through the representative of her estate, be heard now to complain. Appellant overlooks the fact that the *Page 461 
beneficiary received only that to which she was already entitled, and in order to secure these benefits it was merely necessary to make an ex parte application to the court for authority to transfer the funds to the income account, which was accomplished without contest. The fact that the beneficiary consented to the arrangement does not assist appellant in his position. She gave her consent without a full disclosure of the facts, which were known or should have been known to appellant.
"The trustee cannot rely on the ratification to protect himself unless he can prove that the cestui had full knowledge of all relevant facts regarding the act to be ratified and its consequences upon the cestui. Concealment by the trustee of material facts, or failure to inform the cestui of his legal position without ratification and under ratification, will give the cestui the right to treat the confirmation as void.
" 'To establish a ratification by a cestui que trust, the fact must not only be clearly proved, but it must be shown that the ratification was made with a full knowledge of all the material particulars and circumstances, and also in a case like the present that the cestui que trust was fully apprised of the effect of the acts ratified, and of his or her legal rights in the matter.' " Bogert, Trusts and Trustees, pp. 2717-2718, § 942, and cases there cited.
In Carpenter v. Taylor, 164 N.Y. 171, 179, 58 N.E. 53, 55,supra, the court, in considering the power of a beneficiary to disclaim liability, said:
"When the beneficiary is called upon to perform a contract entered into under such circumstances, as the defendant is in this case, he may resist the claim, and the courts cannot sustain such an agreement without encouraging obvious abuses in the administration of trusts."
We find ample support in the evidence for the findings of the lower court disallowing appellant's claim for services.
Order affirmed. *Page 462