Norman PERL, Richard Hunegs, and DeParcq, Anderson, Perl, Hunegs, & Rudquist, P.A., Respondents,

v.

ST. PAUL FIRE AND MARINE INSURANCE COMPANY, Appellant,

and

Cecelia E. Rice and Margaret R. Dunlevy, Defendants.

No. C9–83–125.

Supreme Court of Minnesota.

Feb. 17, 1984.

Gislason, Dosland, Hunter & Malecki by Donald F. Hunter, P.A., Minneapolis, for appellant.

Austin, Roth & Associates, P.A. by Robert M. Austin, Jerome B. Abrams, Minneapolis, for respondents.

Post, Syrios & Bradshaw by Arden J. Bradshaw, Wichita, Kan., for other parties.

SIMONETT, Justice.

On cross-motions for summary judgment, the trial court held that a lawyer's

malpractice insurance policy covers the insured lawyer and his firm for attorney fees forfeited by the lawyer to his client for breach of a fiduciary duty. We affirm coverage for the law firm but reverse as to coverage for the individual lawyer.

Plaintiff-respondents Norman Perl and his law firm, DeParcq, Anderson, Perl, Hunegs & Rudquist, P.A., commenced this declaratory judgment action against their malpractice carrier, defendant-appellant St. Paul Fire and Marine Insurance Company, to determine whether St. Paul Fire and Marine's policy afforded coverage for claims brought against them by a former client, Cecelia Rice.

To best understand the issue presented here, we must first relate the circumstances of Cecelia Rice's suit. In 1977 Ms. Rice had retained attorney Norman Perl and his firm, DeParcq, Anderson, Perl, Hunegs & Rudquist, P.A., to represent her on a Dalkon Shield claim. Perl negotiated with the adjuster for the liability insurer and obtained a $50,000 settlement. Ms. Rice subsequently discovered that the insurance adjuster with whom Perl had negotiated at the same time had been employed by Perl's firm as an investigator. She then sued Perl and his firm, claiming fraud, misrepresentation, negligence, breach of contract, civil conspiracy, violation of the state's consumer protection statutes, breach of fiduciary duty, and punitive damages. On motion for summary judgment, Judge McRae, the trial judge, dismissed all claims against Perl and his firm except for breach of fiduciary duty. The dismissal was on the grounds that, even assuming those claims otherwise had merit, Ms. Rice, as a matter of law, had failed to show any actual damages. Judge McRae then held that Perl's failure to disclose to Ms. Rice his relationship with the insurance adjuster, and the conflicting interests thereby engendered, was a breach of an attorney's fiduciary

duty to his client and that, consequently, "the Perl defendants have forfeited the right to retain the fee they otherwise may have been entitled to * * *." On August 11, 1980, the trial court ordered judgment in favor of plaintiff Rice and against the defendants "for the sum of $20,000.00 representing a refund of attorneys fees previously paid by plaintiff." In June 1982, we affirmed Judge McRae's decision in *Rice v. Perl*, 320 N.W.2d 407 (Minn.1982).

In April 1981, while the appeal in *Rice v. Perl* was pending, Perl and his firm, as plaintiffs, commenced this declaratory judgment action to determine if St. Paul Fire and Marine was obligated to defend the Perl defendants in the Rice action and in a similar suit brought by another claimant, and whether the insurer had to pay "the money damages awarded Cecelia E. Rice." On January 22, 1982, the trial judge, Judge Durda, granted partial summary judgment that St. Paul Fire and Marine was required to defend Perl and his firm. On October 13, 1982, the trial court granted further summary judgment holding that the insurance company was obligated to pay the $20,000 damages.[1] From this last summary judgment only, St. Paul Fire and Marine appeals.

There are, as we see it, two main issues: (1) Does the insurance policy, by its terms, cover forfeited attorney fees? (2) If so, is such a policy provision unenforceable as a matter of public policy?

### I.

We start, then, with the language in St. Paul Fire and Marine's insurance policy. The company agrees:

> To pay on behalf of the Insured all sums which the Insured shall become legally obligated to pay as money damages (other than exemplary or punitive damages), because of any claim * * *

1. Judge McRae's order in *Rice v. Perl,* dated August 11, 1980, as we have noted, ordered judgment entered against the Perl defendants for $20,000 "representing a refund of attorneys fees." Subsequently, on December 11, 1980, on Perl's motion, Judge McRae amended his order

to delete the quoted phrase and substitute the words "as damages."

We see no particular significance in this language change. Judge McRae left his memorandum accompanying his August 11 order unchanged.

arising out of professional services rendered or which should have been rendered for others * * *.

Coverage is excluded, however—

"* * * if and to the extent the claim:

(1) arises out of or in connection with any dishonest, fraudulent, criminal or malicious act or omission of any Insured, or any partner, employee, associate, officer, stockholder or member of any Insured, or any other persons for whose acts any Insured is legally liable."

1. The first issue is whether the award of $20,000 to Ms. Rice is "money damages," as that term appears in the coverage portion of the policy. The insurer claims that a forfeiture of attorney fees is not damages, at least not in the sense of making an injured person whole; that here Cecelia Rice, the claimant, has suffered no damages, has borne no loss, and requires no compensation; further, that the forfeiture of attorney fees is only restitution, not an award of money for damages actually sustained. Perl and his law firm counter that the Rice award was for damages, that the award was declared to be such by Judge McRae, and that the fee forfeiture is really the measure of damages for a breach of fiduciary duty where no actual damages need be proven. The Rice award cannot be labeled restitution, Perl argues, because restitution implies restoring a person to a position he or she formerly occupied, as by the return of something the person formerly had, but here Cecelia Rice never has been entitled to anything more than what she received—her net settlement of $50,000 less the $20,000 fee.

Money damages, ordinarily, are awarded as compensation for loss or injury. Usually a person has a legal right that anyone owing that person a duty shall refrain from inflicting actual loss by certain kinds of conduct. If a loss occurs, the law compensates the injured party by an award of money damages; but if the conduct occurs and no loss results, the legal right has not been violated. C. McCormick, McCormick on Damages at 86 (1935). On the other hand, as McCormick points out, many legal rights are not so conditioned, but are so-called "absolute" rights that the person subject to the duty shall refrain from acting in a given manner under any circumstances, regardless of whether loss or detriment would result. When such an "absolute" right is breached, the law provides a remedy, usually by awarding "nominal" damages. *E.g., Larson v. Chase,* 47 Minn. 307, 311, 50 N.W. 238, 239 (1891) (widow's action for dissection of deceased husband's body. "Every injury imports a damage."); *Sime v. Jensen,* 213 Minn. 476, 7 N.W.2d 325 (1942) (trespass). The allowance of nominal damages is really a fiction to satisfy the legal maxim that every right has a remedy, and so it is that "the law in certain instances gives damages though no loss is shown." McCormick, *id.* at 86.

▆▆▆ The law treats a client's right to an attorney's loyalty as a kind of "absolute" right in the sense that if the attorney breaches his or her fiduciary duty to the client, the client is deemed injured even if no actual loss results. But instead of awarding the injured client nominal money damages for the breach, the law, in this instance, says that the attorney is not entitled to compensation for services rendered, and the client is entitled to recover, as damages, the compensation paid. *In re Estate of Lee,* 214 Minn. 448, 9 N.W.2d 245 (1943). Consequently, when St. Paul Fire and Marine uses the unqualified term "money damages" in its policy, we think it refers to all money damages whether or not awarded to compensate for actual harm. The fee forfeiture in this situation is not restitution.[2] A sum usually equiva-

---

**2.** St. Paul Fire and Marine cites several cases where it has been held that liability policies covering money damages do not cover restitution or restoration of money or property. *Haines v. St. Paul Fire and Marine Insurance Co.,* 428 F.Supp. 435 (D.C.D.Md.1977); *O'Neill Investigations, Inc. v. Illinois Employers Insur-* *ance of Wausau,* 636 P.2d 1170 (Alaska 1981); and *Seaboard Security Co. v. Ralph Williams' Northwest Chrysler Plymouth, Inc.,* 81 Wash.2d 740, 504 P.2d 1139 (1973). These cases involve a governmental authority suing an insured under consumer protection legislation for injunctive relief and ancillary restoration of property

lent to the fee is awarded to the client,[3] not to restore the client to any status quo because of any unjust enrichment, but because the client has been injured. The injury lies in the client's justifiable perception that he or she has or may have received less than the honest advice and zealous performance to which a client is entitled.

We hold, therefore, that the forfeiture of an insured attorney's fees for breach of a fiduciary duty owed the client is "money damages" within the meaning of St. Paul Fire and Marine's policy.

2. Appellant St. Paul Fire and Marine next argues that, if the Rice judgment constitutes "money damages" under the policy, coverage is nevertheless absent because the policy exclusion for a "fraudulent" act or omission then applies. The insurer concedes that the $20,000 Rice award is not for actual fraud; Judge McRae dismissed the cause of action for fraud, it will be remembered, because Ms. Rice could not prove any actual loss. The insurer argues, however, that because Perl was found to have breached a fiduciary duty and such a breach is constructive fraud, the policy exclusion for fraud therefore applies. We think not.

 Constructive fraud is, by definition, not actual fraud but conduct that the law treats as fraud, irrespective of the actor's intent or motive. "Constructive fraud reposes exclusively in the context of fiduciary obligations and is simply a characterization of a breach of such a duty." R. Mallen & V. Levit, Legal Malpractice § 108 at 188 (1981). These two authors, in discussing the "fraudulent act" policy exclusion in a lawyer's malpractice policy, state:

> Fraudulent acts are recognizable under the well-established rules defining fraud, but should not include constructive fraud, or acts or omissions which are deemed fraudulent only because they

constitute a breach of the fiduciary obligations. The mere breach of an ethical rule should not fall within the exclusion unless accompanied by "dishonesty" or "fraud."

R. Mallen & V. Levit, Legal Malpractice § 718 at 900 (1981). Breach of a fiduciary duty, such as disclosure of a client's confidence or representation of adverse or competing interests, may also be characterized as breach by an attorney of a standard of *conduct*, as distinguished from breach of a standard of *care* (which encompasses negligent performance of professional services, similar to malpractice liability in other professions). *Id.* at 3–4. Since much of an attorney's practice involves fiduciary duties, to exclude such conduct from an attorney's liability policy would eviscerate the policy coverage. We hold, therefore, that the policy exclusion for "fraudulent" acts or omissions does not encompass constructive fraud for breach of a fiduciary duty.

As a variation of its argument, St. Paul Fire and Marine quotes from *Bituminous Casualty Corp. v. Bartlett*, 307 Minn. 72, 78, 240 N.W.2d 310, 313 (1976), "If the single insured is allowed through intentional or reckless acts to consciously control the risks covered by the policy, a central concept of insurance is violated." Relying on this proposition, the insurer now argues that insured attorneys should not be allowed "to consciously control" the risks of their malpractice coverage. This theory was not presented to the trial court, however, so we need not reach it here on appeal, although we might note that the *Bituminous Casualty* quote was made in the quite different context of considering what was an "occurrence" for coverage purposes of a construction contractor's general liability policy.

 3. While St. Paul Fire and Marine agrees in its policy to pay "money damages," the policy expressly adds the qualifi-

---

wrongfully withheld. We do not find these cases in point. *But cf. Transcontinental Insurance Co. v. Faler,* 9 Wash.App. 610, 513 P.2d 864 (1973).

**3.** *See* footnote 5, *infra.*

cation of "other than exemplary or punitive damages." We hold that damages measured by the forfeit of attorney fees for breach of a fiduciary duty are not "exemplary or punitive damages," as that phrase is used in the policy, and, therefore, that the exclusion is not applicable to the Rice judgment.

The fee forfeiture serves to provide the injured client with a remedy, but it also has the effect of punishing the attorney for the breach of a fiduciary duty and deterring further lapses in professional conduct. Judge McRae, in his trial memorandum, observed that the client's recovery of the attorney fees "is itself punitive in form and in purpose." On appeal, in affirming the forfeit, we said, "[T]he law has traditionally been unyielding in its *assessment of penalties* when a fiduciary, or trustee, or agent has breached any of his obligations." *Rice v. Perl,* 320 N.W.2d at 411 (emphasis added). It is also true, of course, that the purpose of punitive damages, as used in the traditional sense, is to punish and deter.

■ Nevertheless, though similar, we do not think forfeiture damages and punitive damages are generally considered to be the same thing. While a forfeiture may

punish, the aim is to make amends to the client—to "put right" the attorney-client relationship that has been tainted. Forfeiture of a fee may occur irrespective of the intent and motives of the attorney, *Rice v. Perl,* 320 N.W.2d at 411;[4] punitive damages, however, require a willful indifference to the rights of others. *See* Minn. Stat. § 549.20 (1982). The outer limits of a fee forfeiture cannot exceed the amount of the earned fee;[5] the outer limits of a punitive damages award, on the other hand, have no fixed boundary.

■ At the very least, there is an ambiguity as to whether "exemplary or punitive damages," as stated in the insurance policy, includes a forfeiture of attorney fees. This ambiguity must be construed against the insurer which drafted the language. *Farmers Home Mutual Insurance Co. v. Lill,* 332 N.W.2d 635 (Minn.1983); *LeRoux v. Edmundson,* 276 Minn. 120, 123, 148 N.W.2d 812, 814 (1967). If a fee forfeiture is not to be covered, it would have been a simple matter to write that exclusion into the policy.

## II.

■ We now reach the most troublesome issue. Having found that St. Paul

---

**4.** Judge McRae, for purposes of his summary judgment rulings, assumed that "with respect to Perl's state of mind, I take it that he honestly believed he could, and attempted to, negotiate a settlement of plaintiff's claim with defendant Browne [the adjuster] at arm's length and with no concern other than the best interests of plaintiff. Also, for the purposes of this motion I assume that defendant Browne was being paid for services entirely unrelated to any matters involving Dalkon Shield claims."

**5.** In *Rice v. Perl,* 320 N.W.2d 407 (Minn.1982), we affirmed the trial court's forfeiture of the entire attorney fee even in the absence of any showing that the attorney's breach was in bad faith or affected the services rendered the client, but the issue of whether a forfeiture may be scaled to the degree of misconduct, *i.e.,* be something less than the entire fee, was not raised. There do not seem to be any cases quite on this point. *But see Anderson v. Anderson,* 293 Minn. 209, 216, 197 N.W.2d 720, 724 (1972); and *In re Estate of Lee,* 214 Minn. 448, 460, 9 N.W.2d 245, 251 (1943). We have said, however, that actual fraud may result in a complete forfeiture. *Blackey v. Alexander,* 156 Minn. 478,

482, 195 N.W. 455, 456 (1923) ("The record shows and defendant [attorney] confesses such fraud on his part as to have forfeited *all* his compensation.") (emphasis in original); *Davis v. Swedish-American National Bank,* 78 Minn. 408, 418, 81 N.W. 210, 212 (1899) ("[F]or the rule is that, if an attorney is guilty of *actual fraud or bad faith* toward his client in the matter of his employment, he is not entitled *to any pay* for his services.") (emphasis added).

Ordinarily it would seem breach of the fiduciary duty results in complete forfeiture damages, but it is unclear if there may be exceptions in some situations where actual fraud is absent, where no actual damages are sustained, and where there are multiple client claims. If forfeiture of fees for breach of a fiduciary duty are damages, as we here hold, and if these damages have a punitive content, as we here declare, it is at least arguable that the trier of fact in awarding such damages might consider much the same factors as the trier of fact considers in making a standard punitive damages award. *See* Minn.Stat. § 549.20, subd. 3 (1983).

Fire and Marine's policy provisions do cover payment of the Cecelia Rice judgment, is this policy coverage contrary to public policy and, therefore, unenforceable?[6] In discussing this question, it must be kept in mind that we are not talking about insurance coverage for actual, compensatory damages to a client flowing from an attorney's constructive fraud or breach of a fiduciary duty. Coverage in such a case would lie. We are talking, rather, about coverage for only those damages to the client consisting of forfeiture of the attorney's earned fee.

1. Appellant's public policy argument can be simply stated. If forfeiture of attorney fees is to punish and deter, that purpose is defeated when the attorney's insurance carrier pays. The counter arguments are several. Because public policy also favors freedom of contract, if private parties agree to insure forfeiture of attorney fees, particularly for claims arising from constructive fraud, they should be permitted to do so. *Cf. Harris v. County of Racine*, 512 F.Supp. 1273 (E.D.Wis. 1981), and *Lazenby v. Universal Underwriters Ins. Co.*, 214 Tenn. 639, 383 S.W.2d 1 (1964) (insurability of punitive damages not contrary to public policy).[7] To this might be added the further argument that public policy concerns can more properly be dealt with in the disciplinary proceeding forum, rather than by requiring the attorney personally to provide the client with a remedy in a civil suit. In the last analysis, it seems to us, the public policy issue really depends on the purpose of forfeiture of attorney fees and the importance and weight to be given that purpose.

 The professional conduct of attorneys has always been a matter of prime public policy concern to this court. Thus it is a basic rule that an attorney must represent the client with undivided loyalty and must disclose to the client any material matter which might impair that loyalty or affect the client's interests. *Rice v. Perl*, 320 N.W.2d 407 (Minn.1982); *Selover v. Hedwall*, 149 Minn. 302, 306, 184 N.W. 180, 181 (1921); R. Mallen and V. Levit, Legal Malpractice § 121 at 208 (2d ed. 1981). For breach of this duty, the attorney forfeits his or her right to compensation. *In re Estate of Lee*, 214 Minn. 448, 460, 9 N.W.2d 245, 251 (1943). In *Rice v. Perl*, *supra*, we stressed that the public policy underlying the forfeiture "is a strong one," since fidelity to the client's interests is basic to the trust which characterizes the attorney-client relationship. *Id.* at 411. Consequently, in *Rice* we held that even though the client had shown no loss due to the attorney's failure to disclose and even though the nondisclosure was unintentional, the attorney fees were to be forfeited.

 In view of these concerns, so strongly expressed and felt by this court, we believe that insurance coverage which purports to cover a fee forfeiture by an attorney for his or her own breach of a fiduciary duty, such as the one here, should

---

**6.** Respondents contend the public policy issue was not argued to the trial court and so is not before us now. We disagree. Although the trial court did not discuss public policy in its decision, St. Paul Fire and Marine did raise the issue prominently in its brief, although perhaps more in the context of interpreting policy language than in terms of the validity or enforceability of the policy provision itself. We think public policy considerations more properly bear on the issue of contract validity than contract interpretation. Because the invalidation issue was implicit in the public policy arguments below and since the issue is not dependent on any new or controverted facts, we will consider it.

**7.** There is considerable case law and comment on the insurability of punitive damages, and the authorities are split. *See* cases collected in An-

not., 16 A.L.R. 4th 11. *See also* Burrell & Young, *Insurability of Punitive Damages*, 62 Marquette L.Rev. 1 (1978); Ellis, *Punitive Damages in Iowa Law: A Critical Assessment*, 66 Iowa L.Rev. 1005 (1981); King, *The Insurability of Punitive Damages: A New Solution to an Old Dilemma*, 16 Wake Forest L.Rev. 345 (1980); *An Overview of the Insurability of Punitive Damages under General Liability Policies*, 33 Baylor L.Rev. 203 (1981); *Insurance Coverage of Punitive Damages*, 84 Dickinson L.Rev. 221 (1980). The precise issue of whether punitive damages are insurable is not before us. Judge McRae expressly dismissed the punitive damages claims in *Rice v. Perl*. We have found no case dealing directly with the insurability of a forfeiture of attorney fees.

not be enforceable as a matter of public policy. Our closest case is *Wojciak v. Northern Package Corp.*, 310 N.W.2d 675 (Minn.1981), where we held that insurance coverage was valid for a statutory penalty imposed under a workers' compensation statute for "punitive damages not to exceed three times the amount of any compensation benefit to which the employee is entitled" against an employer for a retaliatory discharge. We went on, however, in *Wojciak*, to say—"[W]e are satisfied that in most instances public policy should prohibit a person from insuring himself against misconduct of a character serious enough to warrant punitive damages." *Id.* at 680. Unlike *Wojciak*, involving an employer-employee relationship, here we are dealing with the attorney-client relationship, "a classification peculiar to itself," [8] where we have always held a breach of trust is a particularly grave matter of public concern.

We hold that the provisions of St. Paul Fire and Marine's liability policy, to the extent they purport to insure an attorney for forfeiture of his or her attorney fees for breach of a fiduciary duty consisting of nondisclosure of matters material to the client's interests and trust, are contrary to public policy and of no validity. We further hold, therefore, that St. Paul Fire and Marine's policy does not afford coverage to respondent Perl for payment of the *Rice* judgment.

██ 2. Our inquiry is not yet at an end. If policy coverage is unenforceable for defendant Perl, who committed the breach of fiduciary duty, is it also unenforceable against the defendant law firm, which is a named insured under the policy, and which is liable for the client's judgment of $20,000 only derivatively or vicariously? We conclude that there is coverage for the law firm.

It seems to us that the policy considerations which deny coverage to the individual offending lawyer do not apply with equal force to the law firm. While the law firm,

quite properly, is held liable to the client for the misconduct of one of its partners or members, we see no reason why the law firm should not be free to acquire insurance, if it can, protecting itself from vicarious liability for the misconduct. The fee forfeiture is primarily to penalize the offending attorney, not the attorney's colleagues who have not participated in the misconduct. It is interesting to note that some courts which prohibit insurance coverage for punitive damages as a matter of public policy make an exception and allow insurance coverage for an employer who is only vicariously liable for the wrongdoing of a servant or agent. *See Dayton Hudson Corp. v. American Mutual Liability Ins. Co.*, 621 P.2d 1155 (Okl.1980); *cf. Ohio Casualty Ins. Co. v. Welfare Finance Co.*, 75 F.2d 58, 60 (8th Cir.1934); *Esmond v. Liscio*, 209 Pa.Super. 200, 224 A.2d 793 (Pa.Super.Ct.1966); Owen, *Punitive Damages in Products Liability Litigation*, 74 Mich.L.Rev. 1257, 1313 n. 276 (1976).

We hold, therefore, that St. Paul Fire and Marine's policy provides valid, enforceable coverage for the professional corporation, DeParcq, Anderson, Perl, Hunegs & Rudquist, P.A., for the money damages awarded Cecelia Rice by reason of defendant Perl's breach of a fiduciary duty owed the client.

This does not necessarily mean that one effect of the forfeiture, to penalize the individual attorney who did the wrong, has been defeated because the insurer has paid the judgment, albeit on behalf of Perl's professional corporation rather than Perl himself. St. Paul Fire and Marine may have a right of indemnity against Perl. With respect to damages for breach of a fiduciary duty measured by forfeiture of attorney fees, Perl has no coverage and is not an insured under St. Paul Fire and Marine's policy, but his professional corporation does have coverage and is an insured. *See Arenson v. National Auto. & Cas. Ins. Co.*, 45 Cal.2d 81, 286 P.2d 816 (1955) (different persons may be different

---

8. *Meagher v. Kavli*, 251 Minn. 477, 493, 88 N.W.2d 871, 882 (1958), quoting from *Krippner v. Matz*, 205 Minn. 497, 506, 287 N.W. 19, 24 (1939).

insureds for coverage purposes under a liability policy). The insurer pays the Rice award on behalf of its named insured, the professional corporation. Under the policy St. Paul Fire and Marine expressly reserves the right, upon making a payment on behalf of an insured, to be "subrogated to all the Insured's rights of recovery therefor against any person." Perl would appear to be such "any person." Any rights, therefore, that the professional corporation, DeParcq, Anderson, Perl, Hunegs & Rudquist, P.A., has to recover from its offending stockholder-member, who, in this instance is not an insured, would seem to inure to St. Paul Fire and Marine. *See Malanga v. Manufacturers Casualty Insurance Co.,* 28 N.J. 220, 229–30, 146 A.2d 105, 110 (1958) (liability insurer having paid judgment for assault on behalf of insured partnership has a right of subrogation against the individual partner who committed the assault).

Affirmed in part and reversed in part.

KELLEY and COYNE, JJ., took no part in the consideration or decision of this case.