**ST. PAUL FIRE & MARINE INSURANCE COMPANY,**
Respondent,

v.

**Norman PERL, Appellant.**

No. C6–87–981.

Supreme Court of Minnesota.

Nov. 13, 1987.

Robert M. Austin, Jerome B. Abrams, Minneapolis, for appellant.

Donald F. Hunter, Minnetonka, for respondent.

YETKA, Justice.

St. Paul Fire & Marine Insurance Co. (hereinafter St. Paul), the plaintiff below, filed a motion for summary judgment in its suit for subrogation of insurance claims paid on behalf of Perl's law firm. Perl filed a cross-motion for partial summary

judgment, alleging that one of the firm's by-laws, which purportedly requires his indemnification, extinguished any subrogation rights possessed by St. Paul. The trial court granted St. Paul's motion and denied Perl's, but found the issue doubtful and important and had it certified for review by this court.

Although the trial court has not formally framed the certified question it seeks this court to answer, we have ourselves formulated the question because, as the respondent indicates in its brief, this court has reviewed the facts material to this case no less than eight times [1] previously and, in our opinion, the matter must be laid to rest. We thus formulate the certified question as follows:

> Whether an indemnification and "hold harmless" agreement entered into between an attorney and his law firm extinguishes the subrogation rights of the firm's insurer for claims paid as a result of the attorney's breach of fiduciary duty to his clients

We answer the question in the affirmative.

In *Perl v. St. Paul Fire & Marine Ins. Co.*, 345 N.W.2d 209 (Minn.1984) (hereinafter *Perl v. St. Paul*), we determined that the law firm of DeParcq, Anderson, Perl, Hunegs & Rudquist, P.A. (hereinafter "the firm") was entitled to reimbursement under its liability insurance policy for fee forfeitures. it paid as a result of appellant Norman Perl's breach of fiduciary duty to his clients. Rather than repeat those facts, we refer to the aforesaid case of *Perl v. St. Paul*.

Under the firm's insurance policy, St. Paul expressly reserved the right to be subrogated to any rights of the firm against any person causing loss. St. Paul filed suit as subrogee of the firm seeking damages from Perl for the claims already paid and seeking an order that it is entitled

to recover from Perl for all future claims for reimbursement under the policy.

In his Answer and Counterclaim, Perl alleged, *inter alia,* that Article VII of the firm's by-laws, adopted November 18, 1974, extinguished St. Paul's right of subrogation. The by-law reads as follows:

> Article VII  Indemnification of Officers, Directors, Stockholders and Employees
>
> Section 1. The corporation shall indemnify and hold harmless all officers, directors, stockholders and employees of the corporation for all costs and expenses, including attorneys' fees, judgments, fines and amounts paid in settlement, by him in connection with or arising out of the defense or settlement of any claim, action, suit or proceedings brought or threatened to be brought against him, whether civil, criminal, investigative or administrative by reason of the fact that he is or was an officer, director, stockholder or employee of the corporation, for his actions or inactions in the practice of law or in the conduct of other corporate business, whether or not it benefited the corporation, if he acted in good faith believing his action or inaction to be lawful and not opposed to the best interests of the corporation.
>
> The foregoing right of indemnification shall not be exclusive of other rights to which any such officer, director, or stockholder, or employee may be entitled as a matter of law, and shall inure to the benefits of his heirs, executors, administrators and personal representatives.

The parties filed cross-motions for summary judgment. The trial court denied Perl's motion and granted St. Paul's motion. The court later vacated its original order, substituting a new order which again granted St. Paul's motion and denied Perl's motion, but certified the question as important and doubtful pursuant to Minn.R.App.P. 103.-03(h).

In *Perl v. St. Paul*, 345 N.W.2d 209, we held that the firm, but not Perl himself,

---

**1.** *Discipline of Perl,* 407 N.W.2d 678 (Minn. 1987); *In re Perl,* 395 N.W.2d 921 (Minn.1986); *In re Perl, Finance & Commerce,* Aug. 1, 1986 (Minn.1986); *In re Perl,* 394 N.W.2d 487 (Minn. 1986); *Gilchrist v. Perl,* 387 N.W.2d 412 (Minn. 1986); *In re N.P.,* 361 N.W.2d 386 (Minn.1985); *Perl v. St. Paul Fire & Marine Ins. Co.,* 345 N.W.2d 209 (Minn.1984); *Rice v. Perl,* 320 N.W. 2d 407 (Minn.1982).

was entitled to insurance coverage for the fee forfeitures which resulted from Perl's conduct. In that opinion, we noted: "St. Paul Fire and Marine *may* have a right of indemnity against Perl." *Id.* at 216 (emphasis added). We expressly recognized the existence of the subrogation clause, which is the basis of St. Paul's present suit, noting:

> Under the policy St. Paul Fire and Marine expressly reserves the right, upon making a payment on behalf of an insured, to be "subrogated to all the Insured's rights of recovery therefor against any person." Perl would appear to be such "any person." Any rights, therefore, that the professional corporation * * * has to recover from its offending stockholder-member, who, in this instance is not an insured, would seem to inure to St. Paul Fire and Marine.

*Id.* at 217. This suit followed *Perl v. St. Paul* and is an attempt by St. Paul to recover for the claims paid as a result of that decision.

The present action is based on St. Paul's right of subrogation, which was expressly reserved in the insurance contract. As a general rule, an insurer has the right to pursue any rights which its insured may have against a party causing the loss. *See, e.g., Great Northern Oil Co. v. St. Paul Fire & Marine Ins. Co.,* 291 Minn. 97, 189 N.W.2d 404 (1971). It is well settled, however, that an insurer, as subrogee, is entitled to no greater rights than those possessed by its insured, the subrogor. The insurer does not possess any independent rights, but merely "steps into the shoes" of the subrogor. *Metropolitan Transit Comm'n v. Bachman's,* 311 N.W.2d 852, 854 (Minn.1981); *Travelers Indem. Co. v. Vaccari,* 310 Minn. 97, 102, 245 N.W.2d 844, 847 (1976); *Great Northern,* 291 Minn. at 99, 189 N.W.2d at 406.

In addition, it is equally clear that, absent a prohibition in the insurance contract, an insured may defeat the subrogation rights of its insurer by executing an exculpatory agreement with the party causing loss. In *Great Northern,* the court accepted as "well established" the principle that "entering into an agreement of release with the wrongdoer before the policy is issued" defeats the insurer's rights of subrogation. *Id.* at 100, 189 N.W.2d at 407.

■ Under the above principles, then, St. Paul may maintain the present action for subrogation only if the firm could have maintained an action against Perl for his breach of fiduciary duty. The critical issue for the court's determination, therefore, is whether the firm possesses any rights under these circumstances which St. Paul may pursue against Perl.

St. Paul's suggestion that the by-law be enforced in a separate proceeding would constitute a waste of judicial resources resulting in yet another in a long line of suits regarding Norman Perl. It also points up a possible anomaly: If the by-law was later upheld and the firm required to indemnify Perl, how could the firm have collected damages from him in this instance? Such a result would effectively nullify the result in *Perl v. St. Paul,* which determined that the firm, but not Perl, was entitled to insurance coverage for the fee forfeitures. If the firm later indemnified Perl, however, the insurance company and Perl would be made whole and only the firm would bear the loss.

In summary, since Perl could seek reimbursement from the firm for any losses he might be found liable to pay the insurer and the firm has a right to be reimbursed from the insurer, what point is there in allowing the insurer's claim against Perl in the first instance? We hold that there is no reason. This decision should end the matter.

As has already been noted, an insured may extinguish the subrogation rights of its insurer by executing an exculpatory agreement with the party causing loss. *Great Northern,* 291 Minn. at 100, 189 N.W.2d at 407. The initial question to be answered is whether the corporate by-law operates as such an exculpatory agreement.

Under the by-law, the firm agreed to indemnify Perl and to hold him harmless for "all costs and expenses" arising out of the corporation's business if Perl "acted in

good faith believing his action or inaction to be lawful and not opposed to the best interests of the corporation." The by-law was adopted in 1974, prior to both the effective date of the insurance coverage and Perl's activities which resulted in these losses. The trial court found "no showing of fraud, misrepresentation or deliberate or intentional attempts to avoid the problem at hand, *viz.*, plaintiff's present subrogation interests."

At the time the by-law was adopted, Minn.Stat. § 301.095 (1974), which governed indemnification, granted corporations the power to indemnify their employees for actions which resulted in loss if the actions were taken in good faith. The statute did not limit indemnification to employees who were successful in defending their actions on the merits—only good faith was necessary.

The language of the by-law closely follows the language of Minn.Stat. § 301.095. Moreover, while the statute is permissive, the by-laws make indemnification mandatory if the requisite good faith is present. Thus, at least without some showing of bad faith, the plain language of the by-law supports Perl's contention that the firm would be precluded from a claim against him for the losses. It is difficult to argue that the firm could maintain an action against Perl while it is simultaneously obligated to compensate him for damages. In addition, the firm agreed to hold Perl harmless for any costs and expenses (again assuming good faith).

The trial court made no fact findings and did not address the issue of good faith. The only evidence on the issue, however, was Perl's affidavit. Viewing the facts in the light most favorable to Perl, it must, therefore, be taken as established that Perl acted in good faith, believing his actions or inactions to be in the firm's best interests. Indeed, the uncontradicted evidence establishes that the firm has complied with the by-law in all of Perl's past litigation in this matter. The firm has paid all costs and expenses engendered as required by the by-law. Since indemnification is mandated only upon a determination of good faith, the only logical conclusion to be drawn from this evidence is that the firm itself believes that Perl acted in good faith. Also, based on the firm's past actions, it would appear that it is reasonable to conclude that the firm would continue to comply with the by-law for any future expenses. At the very least, the firm would perhaps be estopped from contending bad faith at this point.

In sum, both the unambiguous language of the by-law and the past actions of the firm indicate that subrogation rights have been extinguished.[2] This court in the past has upheld the validity of exculpatory clauses when limited to negligent conduct. *See, e.g., Schlobohm v. Spa Petite, Inc.,* 326 N.W.2d 920, 923 (Minn.1982). *See also Great Northern,* 291 Minn. at 100, 189 N.W.2d at 407; *Indep. School Dist. No. 877 v. Loberg Plumbing & Heating Co.,* 266 Minn. 426, 434, 123 N.W.2d 793, 798–99 (1963); *Speltz Grain & Coal Co. v. Rush,* 236 Minn. 1, 7, 51 N.W.2d 641, 644 (1952); *Pettit Grain & Potato Co. v. Northern Pac. Ry. Co.,* 227 Minn. 225, 229–31, 35 N.W.2d 127, 130 (1948). In upholding indemnification agreements, the court has expressed its concern for protecting the public interest in the 'freedom of contract. *Id.; Northern Pac. Ry. Co. v. Thornton Bros. Co.,* 206 Minn. 193, 196, 288 N.W. 226, 227 (1939). To that end, the court has stated that a party may "properly bargain for indemnity against his own negligence where the latter 'is only an undesired possibility in the performance of the bargain, and the bargain does not tend to induce the act.'" *Northern Pac.,* 206 Minn. at 197, 288 N.W. at 227–28. There is nothing to indicate that the acts in question here were

---

**2.** We would like to point out that a determination that the firm has extinguished St. Paul's subrogation rights does not conflict with *Perl v. St. Paul.* The court, in *dicta,* noted that St. Paul *may* have a right of subrogation and that "any rights" of the firm would seem to inure to St. Paul. *Perl,* 345 N.W.2d at 216. However, the by-law requiring indemnification was not before the court at that time. If the firm *had* retained any rights, they would presumably inure to St. Paul.

anything other than an "undesired possibility" at the time the by-law was adopted.

■ While the court may consider whether the enforcement of a facially valid exculpatory agreement violates our determination of public policy, *see, e.g., Schlobohm*, 326 N.W.2d at 923, the legislature has consistently indicated its approval of corporate indemnification agreements. The by-law was enacted pursuant to Minn. Stat. § 301.095 (1974), which specifically permitted such agreements. The subsequent statute, Minn.Stat. § 302A.521 (1987), currently in effect, makes indemnification by a corporation mandatory unless expressly prohibited by its by-laws. In fact, in 1987, the legislature amended Minn. Stat. § 302A.251 (1986), adding a subdivision which specifically authorizes the elimination of a director's personal liability to the corporation for breach of fiduciary duty (with limited exceptions). Act of Feb. 25, 1987, ch. 2, § 2, 1987 Laws 4. It is clear, therefore, that public policy, as established by the legislature, supports indemnification.

However, St. Paul is correct in contending that other jurisdictions under similar corporate statutes have refused to enforce indemnification agreements as violative of public policy when the agreements have purported to exculpate illegal or intentional conduct. *See, e.g., Wilshire Oil Co. v. Riffe*, 409 F.2d 1277 (10th Cir.1969) (applying Delaware corporation statute). However, in Perl's case, there has never been a finding of illegal or even intentional misconduct. *See Gilchrist v. Perl*, 387 N.W.2d 412, 419 (Minn.1986); *Rice v. Perl*, 320 N.W.2d 407, 411 (Minn.1982). Thus, while it is possible that attempted indemnification for illegal or even intentional misconduct would be invalid as a matter of public policy, that issue need not be reached in Perl's case.

■ Moreover, as the court has recognized in other discussions of subrogation rights, St. Paul could have expressly forbidden such agreements in its insurance policy. *See Great Northern*, 291 Minn. at 104, 189 N.W.2d at 409. St. Paul neglected to do so. Given the fact that indemnification agreements are explicitly authorized by the legislature and now implied into corporate by-laws (unless expressly prohibited therein), St. Paul should have been aware of the potential for these or similar claims and could have attempted to preserve its rights.

It seems to us that this failure to incorporate language to protect itself on the part of St. Paul also answers the public policy argument raised by the respondent because the record indicates that Perl's firm found his actions to be in the corporation's best interests, that there was no intent to defraud or to violate the code of ethics, and that Perl acted in good faith. Under these circumstances, the firm's indemnification of Perl is clearly authorized by the applicable statute. We defer then to the legislative determination of public policy.

In addition, any attempt by the court to formulate a method for recovery against Perl would pose a more pragmatic problem: Perl was an officer receiving a salary. He did not receive the fees from the Dalkon Shield cases; the firm did. To require Perl to indemnify the insurer for the total amount forfeited by the firm would seem to "exceed the level necessary to properly punish and deter" the conduct. *Gilchrist*, 387 N.W.2d at 417, *quoting Melina v. Chaplin*, 327 N.W.2d 19, 20 n. 1 (Minn. 1982). However, any attempt to determine what portion of these fees inured personally to Perl and to order repayment could prove to be an almost insurmountable, if not impossible, task. One would need to go back 8 years, attempt to determine what proportion the Dalkon fees received bore to firm income and then attempt to break down the portion of earnings due Perl modified by any other bonus arrangements the firm may have had. Again, it seems to us that the insurance carrier is in a better position to write a policy excluding the type of coverage accorded here.

We trust that this case will end almost 9 years of litigation arising out of the alleged Perl misconduct and that we shall not see another case before this court on the incidents giving rise to the Perl litigation.

The certified question is answered in the affirmative. The case is remanded to the trial court with instructions to enter judgment for appellant Perl on St. Paul's lawsuit and also with instructions for the trial court to litigate the question of the issues raised in the Perl counterclaim.

WAHL and KELLEY, JJ., dissent.

COYNE, J., took no part.

WAHL, Justice, dissenting.

We have come full circle in the latest in a long line of cases involving the actions of attorney Norman Perl.[1] We are asked now to determine whether an indemnification and "hold harmless" agreement entered into between an attorney and his law firm extinguishes the subrogation rights of the firm's insurer for claims paid as a result of the attorney's breach of fiduciary duty to his clients. Because the holding of the majority, in answering that question, departs from the principles set forth in our previous decisions in this matter, I respectfully dissent.

In *Rice v. Perl*, 320 N.W.2d 407 (Minn. 1982), this court held that attorney Perl had breached his fiduciary duty to his client by failing to disclose to his client his non-adversarial relationship with claims adjuster Willard Browne with whom he negotiated his client's settlement.[2] We recognized that:

> * * * the law has traditionally been unyielding in its assessment of penalties

when a fiduciary, or trustee, or agent has breached any of his obligations. The underlying policy is a strong one. It recognizes that insuring absolute fidelity to the principal's (or beneficiary's) interests is fundamental to establishing the trust necessary to the proper functioning of these relationships.

*Rice*, 320 N.W.2d at 411.

Because Perl and his law firm breached their fiduciary duty to their client, they were required to forfeit the fees obtained from that client. *Id.*

In *Perl v. St. Paul Fire & Marine Insurance Company*, 345 N.W.2d 209 (Minn. 1984) this court unequivocally held that, while the law firm was entitled to indemnity from its malpractice insurer for the fees required to be forfeited in *Rice*, insurance coverage for Perl himself was void as against public policy. We stated that:

> The professional conduct of attorneys has always been a matter of prime public concern to this court. Thus it is a basic rule that an attorney must represent the client with undivided loyalty and must disclose to the client any material matter which might impair that loyalty or affect the client's interests. * * * For breach of this duty, the attorney forfeits his or her right to compensation.

*Perl v. St. Paul Fire and Marine Insurance Co.*, 345 N.W.2d 209, 215 (Minn.1984).

We recognized that forfeiture of fees would be rendered meaningless if the attorney could recoup the forfeited fees through

---

**1.** *Rice v. Perl*, 320 N.W.2d 407 (Minn.1982); *Perl v. St. Paul Fire & Marine Insurance Co.*, 345 N.W.2d 209 (Minn.1984); *In re N.P.*, 361 N.W.2d 386 (Minn.1985); *Gilchrist v. Perl*, 387 N.W.2d 412 (Minn.1986); *In re Perl*, 394 N.W.2d 487 (Minn.1986); *In Re Perl*, 395 N.W.2d 921 (Minn. 1986); *In Re Perl*, 407 N.W.2d 678 (Minn.1987).

**2.** During the time period from 1976 through 1979 when negotiating settlements with Perl for Rice and other clients in Dalkon Shield claims for Aetna, A.H. Robins' insurer, Browne was simultaneously employed and paid as a claims adjuster by Aetna and by the Perl firm on a part time basis. *Rice v. Perl*, 320 N.W.2d at 411. It is beside the point that 8 years later the referee in *In Re Perl*, 407 N.W.2d 678, 680, found that "it was not shown that Browne was paid any amounts by Perl for settling Dalkon Shield cases" and that "[it] also does not appear that

the clients were prejudiced in these settlements." 407 N.W.2d 678, 680 (Minn.1987). What matters is that the clients had the right to this information before proceeding with settlement negotiations. As Justice Otis succinctly noted in *Rice v. Perl*, "If Rice had known, she could have decided to engage another attorney to represent her, or might have decided not to go forward at all. The potential risks to her could be serious. If Aetna later rescinded the agreement, Rice's reputation might suffer simply from having been a party, albeit an innocent party, to this enactment. She was unfairly put in some jeopardy by her fiduciary. An attorney has an obligation to prevent placing his client in a position which might well taint a settlement transaction. The profession's standards of integrity demand no less." 320 N.W.2d at 411.

insurance payments. The court flatly stated:

> In view of these concerns, so strongly expressed and felt by this court, we believe that insurance coverage which purports to cover a fee forfeiture by an attorney for his or her own breach of a fiduciary duty, such as the one here, should not be enforceable as a matter of public policy.

*Id.* at 215–16.

In yet another case involving attorney Perl and his obligation to forfeit fees, we noted that "forfeiture damages are both reparational and admonitory." *Gilchrist v. Perl,* 387 N.W.2d 412, 416 (Minn.1986). In that case we recognized that, "undeniably, the predominant functions of any fee forfeiture are punishment and deterrence." *Id.*

The result reached by the majority in the instant case defeats the very purpose of fee forfeiture and renders our holding in *Perl v. St. Paul Co.* meaningless. Despite our protestations to the contrary in that case, it has come to pass through the operation of the indemnification agreement of which we were not advised at that time, that "one effect of the forfeiture, to penalize the individual attorney who did the wrong, has been defeated because the insurer has paid the judgment, albeit on behalf of Perl's professional corporation rather than Perl himself." 345 N.W.2d at 216.

> We have long recognized that:
> Where a person is able to insure himself against punishment he gains a freedom of misconduct inconsistent with the establishment of sanctions against such misconduct. It is not disputed that insurance against criminal fines or penalties would be void as violative of public policy. The same policy should invalidate any contract of insurance against the civil punishment that punitive damages represent.

*Wojciak v. Northern Package Corp.,* 310 N.W.2d 675, 680 (Minn.1981), *citing Northwestern Nat. Cas. Co. v. McNulty,* 307 F.2d 432, 440–41 (5th Cir.1962). In recognition of the public policy concerns described in *Wojciak,* we denied Perl insurance coverage for fees he was required to forfeit as a result of his misconduct. These same public policy concerns require that Perl not receive indirect indemnification by way of our approving the foreclosure of the insurer's right to subrogation.

In *Perl v. St. Paul Co.,* this court sent a clear message to the attorneys of this state that an attorney committing misconduct, and not the insurer, will bear the financial burden of repayment of forfeited fees. 345 N.W.2d 209. Today this message is obliterated as the majority's holding allows Perl to escape this financial burden by allowing the burden to be placed on the insurer. Indeed, the result reached by the majority removes the financial burden from Perl and places it upon all of the attorneys of this state, who will pay the cost through increased malpractice insurance premiums. This result reflects neither justice nor sound public policy.

I would hold, in accordance with the principles set forth in *Perl v. St. Paul Fire and Marine Insurance Co.,* 345 N.W.2d 209 (Minn.1984), that the indemnification agreement between Perl and his law firm is void as against public policy with regard to the fees forfeited by Perl by reason of his breach of fiduciary duty to his clients, and that St. Paul Co. is entitled to enforce its right of subrogation against attorney Perl.

I would answer the certified question in the negative.

KELLEY, Justice. I join in the dissent of Justice Wahl.

COYNE, Justice. Took no part in the consideration or decision of this case.